BERNARD WOLFMAN & others[1] *vs.* BOARD OF APPEALS
OF BROOKLINE & others.[2]

Norfolk.   September 14, 1982. — January 13, 1983.

Present: GRANT, GREANEY, & PERRETTA, JJ.

*Zoning,* Variance; Special permit; Nonconforming use or structure; Board
of appeals:  decision.

On appeal from a decision of a municipal board of appeals, the judge cor-
rectly concluded that the board had not exceeded its authority in grant-
ing a variance to allow construction of an apartment building which
encroached on a "buffer zone" between multiple-dwelling buildings
and single family homes, where the judge found, on sufficient
evidence, that, because of characteristics peculiar to the locus and not
affecting the zoning district generally, compliance with the zoning by-
law so as to avoid an invasion of the "buffer-zone" would have created
a financial hardship to the developer in increased foundation costs.
[114-117]
Although a municipal board of appeals, on an application for a variance,
lacked the authority to allow by special permit proposed balconies in
the construction of an apartment building since their projection would
reduce the front yard to a depth below the minimum set-back require-
ments of the zoning by-law, this court would not annul the board's
decision granting the permit where its findings of substantial hardship
with respect to its grant of a height variance were equally applicable
to the proposed balconies.  [117-120]
A municipal board of appeals made all determinations necessary to the
grant of permits and variances for construction of an apartment build-
ing.  [120]
The facts that attorneys for real estate developers submitted a draft deci-
sion to a municipal board of appeals and that the board may have
relied upon that draft in writing its decision did not show lack of inde-
pendent analysis of the facts by the board.  [120]

[1] Roger Golde, Joseph Gannon and Leonard Sugarman, all owners of
single family dwellings and all persons aggrieved within the meaning of
G. L. c. 40A, § 17.

[2] Wallace Yaffe, Kenneth Korb and Petros Palanjian, collectively re-
ferred to throughout this opinion as the developers.

CIVIL ACTION commenced in the Superior Court Department on December 23, 1980.

The case was heard by *Sherman, J.,* a District Court judge sitting under statutory authority.

*Joseph S. Murphy* for the plaintiffs.

*Sheldon M. Drucker (Marilyn D. Stempler & Steven B. Levine* with him) for Petros Palanjian & another.

*Cathleen Cavell,* Associate Town Counsel, for Board of Appeals of Brookline, was present but did not argue.

PERRETTA, J. The defendant board granted the defendant developers various permits and variances which allow the developers to build a sixty-unit apartment building on a lot situated at the corner of Beacon and Borland Streets in Brookline. These units, if constructed, will be sold as condominiums having off-street parking facilities and certain amenities, such as balconies and a swimming pool. Pursuant to G. L. c. 40A, § 17, the plaintiffs appealed to the Superior Court, where the trial judge concluded that the board had not exceeded its authority in granting the permits and variances. The plaintiffs raise numerous issues on this appeal, but their primary contention is that the board and the trial judge were in error in concluding that a literal enforcement of the Brookline zoning by-law would involve a substantial hardship to the developers. We affirm the judgment.

The lot, consisting of approximately 41,889 square feet, is irregular in shape, similar to a reverse "L," and was described by the trial judge, who viewed the locus, as "an eyesore of a pit with overgrown vegetation in the midst of a thickly settled residential area on an MBTA line next to a medical building whose tenants and patients use the same as a parking lot with access from Borland Street down a steep incline." The grade of the pit is six feet below Beacon Street, thirteen feet below Borland Street, and twenty feet below an adjacent house to the rear of the lot.

The plot is the last undeveloped lot in the M-2.0 district, i.e., a district zoned for multi-family residences. The neighborhood to the back of the site is comprised of big, single-family houses on large lots. As proposed, the building con-

tains about 89,325 square feet of floor area, sits fifteen feet back from the Beacon Street lot line, and is eight stories above grade level. The building is to be situated parallel to, and with the main entrance fronting on, Beacon Street.

1. *The Variances.*

A. *Height of the Building.*

Under § 5.31(c) of the Brookline zoning by-law, there must be a "buffer zone" between multiple-dwelling buildings in an M-2.0 district and single-family houses located close to such a district. The purpose of the "buffer zone" is to provide protection for the single-family houses from increased shadowing caused by high-rise buildings. A variance is required in the present instance because the back of the proposed building will intrude upon the "buffer zone" at two points, one by about 176 square feet and the other by about 4.32 square feet.[3]

To meet the dimensional requirements necessary to avoid an invasion of the "buffer zone," and thus the need for a variance, the developers would have to reduce the height of the building nearest to the residential zone while increasing the height of the building at the Beacon Street side. That proposal, which adds height and weight to the building on the side adjoining the medical building, would involve a substantial increase in the foundation costs, claim the developers, because of the soil conditions, shape, and topography of the locus. The variance spares the developers this substantial expense.[4]

---

[3] Studies indicating that the building would have no shadowing effect on the neighboring properties were presented to the board.

[4] Consistent with the requirements of G. L. c. 40A, § 10, the board, in granting the variance, found: (1) that the shape of the land requires that the building be placed parallel either to Beacon or Borland Street and that its shape conform, more or less, to the depth of the land opposite the street which the building parallels; (2) that to avoid "massing" along Borland Street, the building must be sited parallel to Beacon Street; (3) that a relatively high water table and an old river channel through the land have produced a "complex subsurface profile" which requires extensive subsurface preparation; (4) that these soil conditions are "unique to the locus rather than to the area"; (5) the stability of the land is affected by the

Wolfman v. Board of Appeals of Brookline.

In addition to those facts already recited, the trial judge found that the following circumstances give rise to a substantial hardship: (1) the locus "contains an irregular pattern of subsurface soil conditions and materials at varying levels of elevation and a relatively high water table"; (2) these soil conditions "show the locus to be unique as compared to other lots along Beacon Street"; (3) "[a]ny construction on this lot requires extra expenses, amounting to a premium cost, for bracing of the rear slope of the log adjacent to the existing single-family residence . . . and adjacent to the medical office building"; and (4) the developers would be required to spend amounts estimated from $250,000 to $500,000 in premium costs for construction of a foundation on this lot due to the uncertain soil conditions and the need for protective measures for the adjacent structures, which are peculiar to this lot and not generally found in the immediate vicinity.

The plaintiffs contend that two prerequisites which are essential to the granting of a variance and which were found by the trial judge to exist have not in fact been established. First, they claim that there is no evidence to show that the soil conditions affecting the locus did not affect generally the zoning district in which the locus is situated. The record, however, directly contradicts that claim. The results of the boring tests conducted at the site and the testimony of a soil expert, as well as that of one of the developers, Palanjian, who had constructed four buildings within a two mile radius of the locus, fully justify the trial judge's findings that the soil conditions were peculiar to the locus. Even assuming that the soil expert would have testified on cross-exami-

existence of the "massive medical office building"; (6) that the intrusion upon the "buffer zone" will be minimal; and, (7) that, "[i]f relief were not to be granted . . . the foundation costs . . . could be even more substantial."

The board also made findings in support of its conclusion that "desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such . . . by law." G. L. c. 40A, § 10, as appearing in St. 1975, c. 808, § 3. It serves no purpose to summarize the findings on these prerequisites as the plaintiffs do not challenge them.

nation in a manner consistent with the plaintiffs' offer of proof — that "it is a glacial area and that the deposits vary from site to site but . . . there are other similar deposits in the area" — such testimony would not have compelled the conclusion that the soil conditions of the locus also "affect-[ed] generally the zoning district in which it is located." See *Shacka* v. *Board of Appeals of Chelmsford,* 341 Mass. 593, 595 (1961). Cf. *Planning Bd. of Watertown* v. *Board of Appeals of Watertown,* 5 Mass. App. Ct. 833, 834 (1977). Moreover, the finding of substantial hardship is not based on the soil conditions alone. The trial judge took all the circumstances of the locus, the soil conditions, the reverse "L" shape, the grade and the adjacent buildings, into account, and we cannot say that he was in error in finding that these circumstances did not affect the zoning district generally. See *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 551-552 (1962); *Broderick* v. *Board of Appeal of Boston,* 361 Mass. 472, 477-478 (1972); *Josephs* v. *Board of Appeals of Brookline,* 362 Mass. 290, 293 (1972). Compare *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676, 680 (1953); *Shacka* v. *Board of Appeals of Chelmsford,* 341 Mass. at 595; *Cass* v. *Board of Appeal of Fall River,* 2 Mass. App. Ct. 555, 559 (1974).

The plaintiffs' second contention, that there is no evidence showing that the peculiarities of the locus are the cause of a financial hardship, also fails on the record. The soil expert and Palanjian testified that the premium costs of construction, estimated on the low side to be in the range of $250,000 to $500,000, were due primarily to: (1) the grade changes of the land; (2) foundation requirements for constructing a heavy building on a clay and sand subsurface; and (3) the need for bracing to give lateral support to the medical building, the rear slope of the locus, and utilities on Beacon and Borland Streets. These expenses are not personal to the developers but would be experienced by anyone attempting to make a reasonable and permitted use of the locus. See *Sherman* v. *Board of Appeals of Worcester,* 354 Mass. 133, 135 (1968); *Johnson* v. *Board of Appeals of*

*Wareham*, 360 Mass. 872, 873 (1972). Compare *Abbott* v. *Appleton Nursing Home, Inc.*, 355 Mass. 217, 220-221 (1969). See generally 3 Anderson, American Law of Zoning § 18.28 (2d ed. 1977).[5]

B. *Front Yard Set-Back.*

Under § 5.00 of the zoning by-law, as it applies to this building, the minimum depth of a front yard in an M-2.0 district is fifteen feet, which, as required by § 5.50, "shall be provided between the front lot line . . . and the nearest point of any building . . . except as may be permitted hereafter." Exceptions which may be permitted under § 5.51 are, among others, "[g]*round* story bays and porches . . . [which] may project *into* any front yard three and one-half feet" (emphasis supplied).

As proposed, the building is set fifteen feet back from the Beacon Street lot line, and balconies will extend three and one-half feet from the building over the yard. The building commissioner had advised the developers that a variance was required. Upon their application for a variance, the board granted the developers a special permit under § 5.43 of the zoning by-law. That section permits the board to reduce the front yard setback requirements but not below the minimum depth of fifteen feet in M districts.[6]

The plaintiffs contended before the trial judge that if the balconies are to be constructed, a variance rather than a special permit is required, as the projections will reduce the

---

[5] These authorities also dispose of the plaintiffs' contention that the trial judge erroneously refused to find, as requested by the plaintiffs, that the developers had failed to show that they could not use the locus in a manner which would not require the granting of a variance, a question upon which a court would be hard put to substitute its judgment for that of the board. See *Caruso* v. *Pastan*, 1 Mass. App. Ct. 28, 29-30 (1973).

[6] In granting the special permit, the board found that relief under § 5.43 was justified because: (1) the building would have met all the yard setback requirements of the zoning by-law if it had been sited parallel to Borland Street as originally requested; (2) the abutters preferred that the building parallel Beacon Street; and (3) the residents of the neighborhood preferred a wide rear yard setback of a depth almost three times that required by the zoning by-law. See G. L. c. 40A, § 9.

front yard to a depth below fifteen feet in violation of § 5.43 of the zoning by-law. The trial judge found, however, that the balconies fell within the exceptions permitted under § 5.51. The plaintiffs' contentions before us are that the balconies cannot be permitted under either § 5.43, for the reason previously recited, or § 5.51, as a balcony cannot be viewed as a porch extending into a front yard. Thus, they argue, while a variance is necessary, it is unattainable because the developers failed to show any substantial hardship justifying a variance for the construction of the balconies. For that assertion, the plaintiffs seek support from the uncontradicted testimony of the soil expert to the effect that the already excessive premium costs would not be increased further if the building were moved back three and one-half feet more from Beacon Street.

Permission to the board under § 5.43 to allow a reduction in the minimum depth of a front yard does not include authorization to reduce that depth below fifteen feet in an M-2.0 district. See *Werner* v. *Board of Appeals of Harwich*, 2 Mass. App. Ct. 647 (1974). In considering whether a special permit was authorized under § 5.51, we apply ordinary principles of statutory construction, see *Framingham Clinic, Inc.* v. *Zoning Board of Appeals of Framingham*, 382 Mass. 283, 290 (1981), and conclude that the balconies are not within the ambit of that provision.[7] We think the plaintiffs correctly construe the words "ground story" as modifying both "porches" and "bays." Moreover, we think it clear from the usual and ordinary meanings given to the words "porches" and "balconies" that the former pertains to a ground level projection whereas the latter applies to building extensions above that level, here the second through sev-

---

[7] Section 5.51 of the zoning by-law provides, in full: "Ground story bays and porches not over half the length of the front wall may project into any front yard three and one-half feet. Belt courses, chimneys, flues, fins, columns, leaders, sills, pilasters, lintels and ornamental features may project not more than one foot, and cornices and gutters not more than two feet, over a required front yard. In no case shall any such projection come within five feet of any front lot line, except in districts where no front yard is required."

enth floors. See Webster's Third New Int'l Dictionary at 165, 1766 (1971). Our construction of § 5.51 is reinforced by the use made of the prepositions "into" and "over" with respect to the various types of building projections. Those which extend "over" the front yard are limited to a depth of two feet.

Even though the board lacked the authority to allow the proposed balconies by special permit, we have no occasion to reverse the judgment of the Superior Court and order that the board's decision be annulled. The more stringent findings necessary to justify the granting of this variance, *Kiss* v. *Board of Appeals of Longmeadow*, 371 Mass. 147, 153 (1976), were specifically made by both the board and the trial judge, see citations collected and discussed in *Cass* v. *Board of Appeals of Fall River*, 2 Mass. App. Ct. at 558 n.5, in respect to the height variance. While the plaintiffs would have us isolate the justification for the height variance from a set-back variance, the board made those findings equally applicable to the proposed balconies, as well as to other proposals not challenged by the plaintiffs, so that the building could be constructed consistent with the intent of the zoning by-law, taking into account all the circumstances particular to the locus, as required by c. 40A, § 10. As put by the board: "With but one exception [the height variance], each of the variances set forth in the Building Commissioner's letter of denial were alternatives to the same relief which the Board has granted by special permits. To the extent any of such relief does require a variance instead of a special permit, the Board grants the same to permit the proposed building to be constructed in its proposed location and within its proposed dimensional envelope." Based upon his previously discussed detailed and comprehensive subsidiary findings, the trial judge concluded that "[t]he decision of the Board as the same relates to both the special permits and the variances did not exceed its authority." We concern ourselves with the validity but not the wisdom of the board's actions. *Kiss* v. *Board of Appeals of Longmeadow*, 371 Mass. at 154, and cases therein cited. We see no

basis for annulling the board's decision. See *Rodenstein* v. *Board of Appeal of Boston*, 337 Mass. 333, 336-337 (1958); *Dion* v. *Board of Appeals of Waltham*, 344 Mass. at 551-552.

2. *Future Determinations.*

The specificity and particularity of the board's decision in respect to the special permits and variances granted to the developers remove all force from the plaintiffs' contention that the decision is defective for the reasons discussed in *Weld* v. *Board of Appeals of Gloucester*, 345 Mass. 376, 378-379 (1963). The board's actions fall well within the scope of cases such as *Kiss* v. *Board of Appeals of Longmeadow*, 371 Mass. at 158-159, *Planning Board of Falmouth* v. *Board of Appeals of Falmouth*, 5 Mass. App. Ct. 324, 326-327 (1977), and *Balas* v. *Zoning Board of Appeals of Plymouth*, 13 Mass. App. Ct. 995, 996 (1982).

3. *Independent Analysis by the Board.*

The facts that the developers' attorneys submitted a draft decision to the board and that the board may have relied upon that draft in writing its decision would not, standing alone, constitute a showing of a lack of independent analysis of the facts by the board. Cf. *Cormier* v. *Carty*, 381 Mass. 234 (1980); *Markell* v. *Sidney B. Pfeifer Foundation, Inc.*, 9 Mass. App. Ct. 412, 416-418 (1980). Any showing of wholesale adoption that the plaintiffs might have been able to make had the trial judge not quashed their subpoenas would have been neutralized totally by the fact that the trial judge did as required and heard "the matter de novo and . . . determine[d] the legal validity of the board's decision upon the facts found by him." *Garvey* v. *Board of Appeals of Amherst*, 9 Mass. App. Ct. 856, 856 (1980). See also Ford, Judicial Review in Zoning Variance Cases and Related Matters, 61 Mass. L. Q. 24, 25 (1976).

4. *Standing and Notice.*

For the reasons set out in *Dion* v. *Board of Appeals of Waltham*, 344 Mass. at 554-555, and because the plaintiffs make no claim, let alone showing, of prejudice, *Kasper* v. *Board of Appeals of Watertown*, 3 Mass. App. Ct. 251, 257-

258 (1975), and *Ranney* v. *Board of Appeals of Nantucket*, 11 Mass. App. Ct. 112, 114-115 (1981), their final contentions lack merit.

*Judgment affirmed.*