PETER R. PAULDING & another[1] *vs.* CHARLOTTE HEAVENS
BRUINS & others.[2]

Plymouth. September 18, 1984. — October 29, 1984.

Present: PERRETTA, CUTTER, & FINE, JJ.

*Practice, Civil,* Zoning appeal, Parties. *Zoning,* Variance.

On appeal from a decision of a zoning board of appeals granting a variance
from the frontage and width requirements of the town's zoning by-law,
the judge did not err in determining that the plaintiffs, abutters of the
parcel in question concerned about harm to their property, were persons
aggrieved within the meaning of G. L. c. 40A, § 17. [709]

A zoning board of appeals did not abuse its discretion in granting a variance
from the frontage and width requirements of the town's zoning by-law,
where the "pork chop" shape of the lot was unique in the area, the size
of the lot exceeded that of most surrounding lots, and the existing
topography would accommodate a driveway from a public way to the
main portion of the lot, and where the lot would be unbuildable without
the variance. [709-712]

CIVIL ACTION commenced in the Superior Court Department
on February 28, 1983.

The case was heard by *Dolan,* J.

*Edward T. Angley* for the plaintiffs.

*David Hern, Jr.,* for Charlotte Heavens Bruins & another.

FINE, J. The Pauldings, whose lot is adjacent to the locus
on the northwest side, appeal from a decision of the Superior
Court upholding the grant by the Plymouth zoning board of
appeals to Howard J. Heavens of a variance from the frontage
and width requirements in the town's zoning by-law.[3] The lot

---

[1] His wife, Ruth O. Paulding.

[2] Bruins is acting on behalf of her father, Howard J. Heavens, who is
the owner of record of the property and is also a defendant. The other
defendant is the zoning board of appeals of Plymouth.

[3] The locus appears as lot 13 on the sketch which accompanies this opinion.

for which the variance was granted is a "pork chop" lot. Some-
what larger than most of the surrounding developed lots to the
east of the locus but only ninety feet wide, it has a fifteen-foot
wide strip, four hundred feet in length, running from the street
to the main portion of the lot. The bulk of the lot is well back
from any street nearby. The frontage required by the town

by-law on a public way is thirty feet, fifteen feet more than the lot provides. The width requirement is one hundred fifty feet. See the accompanying sketch. The lot was created in its present form in the 1920's, as far as appears prior to the adoption by the town of any zoning by-law.

Bruins contends on cross-appeal that the Superior Court was incorrect in ruling that the Pauldings, the only individuals objecting to the variance, have standing to appeal from the board's decision. Because, in our view, the findings of the board and the trial judge are adequate to justify the grant of the variance, we deal only briefly with the standing issue.

General Laws c. 40A, § 17, as amended through St. 1982, c. 533, § 1, provides that "[a]ny person aggrieved by a decision of the board of appeals . . . whether or not previously a party to the proceeding . . . may appeal to the superior court department. . . ." There is a rebuttable presumption that the Pauldings, as abutting property owners entitled to receive notice of the public hearing (G. L. c. 40A, § 11), were persons aggrieved. *Marotta* v. *Board of Appeals of Revere,* 336 Mass. 199, 204 (1957). The judge decided that the plaintiffs' fears of erosion, flooding, and damage to trees on their lot, should a driveway be built as planned, were not unreasonable. "[W]hether a party is 'aggrieved' is a matter of degree . . . and the variety of circumstances which may arise seems to call for the exercise of discretion rather than the imposition of an inflexible rule." *Rafferty* v. *Sancta Maria Hospital,* 5 Mass. App. Ct. 624, 629 (1977). A trial judge's findings concerning whether a person is aggrieved should not be reversed unless they are clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). *Waltham Motor Inn, Inc.* v. *LaCava,* 3 Mass. App. Ct. 210, 217 (1975). Here, there was ample evidence in the record to support the judge's finding that the Pauldings, as abutters concerned about harm to their property, were aggrieved persons entitled to appeal. Compare *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston,* 324 Mass. 427 (1949).

The Pauldings contend that the board exceeded its authority in granting the variance. The first paragraph of G. L. c. 40A, § 10, as appearing in St. 1975, c. 808, § 3, states in part that

a board may grant a variance with respect to particular land only where it "specifically finds that owing to circumstances relating to the soil conditions, *shape, or topography* of such land . . . and especially affecting such land . . . but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner" (emphasis added). The Pauldings rely exclusively on *Warren* v. *Zoning Board of Appeals of Amherst,* 383 Mass. 1 (1981), in maintaining that the first part of this required finding, made by the board in conclusory terms, was not adequately supported by the facts. In *Warren,* the court noted that the only circumstance especially affecting the lot in question was its lack of adequate frontage. It stated, "If the Legislature intended the mere fact of a deficiency in the required frontage of a lot to be sufficient, *without more,* to satisfy this particular prerequisite for a variance, it is difficult to believe that they would not have said so in this statute. They did not do so, and we believe that they did not intend that result." (Emphasis added.) *Id.* at 11.

The lot involved in the instant case has significant special characteristics beyond the lack of conformity with zoning. requirements. The board noted in its findings that it has a "pork chop" shape. The assessor's map of the area, which was before the board, reveals that no other lot in the immediate neighborhood has a similar shape. In fact, that map reveals a shape that is so unusual that one would have to conclude that it also differed from most lots in the zoning district. In addition, the board stated that the size of the lot "exceeds that of most surrounding lots by a significant amount," and that the existing topography would accommodate a driveway from the public way to the main portion of the lot. The special circumstances as to the shape, when considered with the other characteristics of the lot which have been referred to, are sufficient in our view to support the board's required finding of special circumstances relating to the land but not affecting generally the zoning district in which it is located. *Broderick* v. *Board of Appeal of Boston,* 361 Mass. 472, 477 (1972). *Wolfman* v.

*Board of Appeals of Brookline,* 15 Mass. App. Ct. 112, 115 (1983). The findings of the Superior Court judge, after a de novo trial in the course of which she took a view, are more ample than those of the board. Among other things, the judge found the "shape, location and configuration of [the lot to be] unique when compared to the surrounding parcels in that neighborhood and within that zoning district." She concluded that the board did not exceed its authority in granting the variance. Thus, because both the board and the judge found unusual characteristics of the lot apart from the absence of the required frontage and width, the *Warren* case is not controlling.

The board's finding, in which the judge concurred, that the defendants would suffer substantial hardship if the variances were not granted, is also adequately supported. The Pauldings, contending otherwise, rely on *Bruzzese* v. *Board of Appeals of Hingham,* 343 Mass. 421 (1962). In that case, the landowner had a single conforming house lot which had on it a single family dwelling. The zoning board of appeals denied his request for a variance to divide the single conforming lot into two house lots, neither of which would comply with the zoning by-law. In upholding the denial of the variance, the court stated, "We may infer that it would be of greater advantage to him if he were permitted to erect a second house on this lot. However, we do not construe the words 'financial or otherwise' in the statute to mean that a deprivation of potential advantage constitutes a 'substantial hardship.'" *Id.* at 424.

In the instant case, the defendants are not attempting to subdivide their lot to achieve greater financial gain. It is correct, as the Pauldings point out, that the health of Bruins' father, his financial situation, and any other considerations unrelated to the underlying real estate, are irrelevant to the board's inquiry into the question of substantial hardship. *Huntington* v. *Zoning Board of Appeals of Hadley,* 12 Mass. App. Ct. 710, 715-716 (1981). The board of appeals referred to such considerations in its decision. It also found, however, that the land can be sold only if the variance is granted. The judge found that the lot is an unbuildable one without the variance and, further, that it appears to have no other use but that of a residential

home site. See *Chater* v. *Board of Appeals of Milton,* 348 Mass. 237, 245 (1964). Since the hardship relates to the land itself, the finding of substantial hardship was not improper.

The Pauldings do not raise any other issues. They do not argue that the grant of the variance would cause "substantial detriment to the public good" or that it would "nullif[y] or substantially derogat[e] from the intent or purpose" of the by-law (G. L. c. 40A, § 10). Consequently, we do not consider that issue. We note, however, that both the board and the judge made additional findings relating to the public good, including findings that the placement of a single-family residence on the lot would comport with the intent of the zoning by-law and that it would not have a significant impact on neighborhood traffic. We note further that the board had granted identical variances for the locus on two prior occasions but that they had expired because there was no timely use made of them.

*Judgment affirmed.*