VALENTINA GUIRAGOSSIAN *vs.* BOARD OF APPEALS OF
WATERTOWN & another.[1]

Middlesex.   September 9, 1985. — November 19, 1985.

Present: GREANEY, C.J., GRANT, & FINE, JJ.

*Practice, Civil,* Zoning appeal. *Zoning,* Variance, Judicial review.

Findings by a local zoning board of appeals and by a Superior Court judge
   sustaining the action of the board in granting a variance for residential
   development on a parcel located in an industrial zone were insufficient
   to satisfy the requirements of G. L. c. 40A, where the only unique
   feature of the parcel was its lack of street frontage, access to it being
   provided by rights of way through the residential district bordering the
   parcel, and where the applicant for the variance failed to show that the
   parcel could not be put to industrial use. [115-120]

CIVIL ACTION commenced in the Superior Court Department
on September 23, 1983.

The case was heard by *Robert V. Mulkern,* J.

*F. Joseph Gentili* for the plaintiff.

*John F. Corbett (Mary E. Corbett* with him) for Stanley
Kruszewski.

*Belinda Bean* for Board of Appeals of Watertown, was pres-
ent but did not argue.

GREANEY, C.J. This is an appeal by an aggrieved landowner
(Valentina Guiragossian) from a judgment of the Superior
Court. The judgment upheld decisions of the board of appeals
of Watertown that granted Stanley Kruszewski use and other
variances, and a special permit for the construction of a resi-
dential condominium project in an industrial zone. We reverse
the judgment.

The pertinent facts are as follows. The parcel is known as
30 Rear Washburn and 53 Rear Franklin Streets, Watertown.

---

[1]Stanley Kruszewski.

It contains 56,800 square feet of land and is located in an I-Industrial district, where any residential use is prohibited. The shape of the parcel is as depicted on the sketch on the following page. It is bounded on one side and part of another by an industrial district and on the remaining borders by a T-Two Family residential district. The parcel has no street frontage. Access to it is provided by two rights of way through the residential district, one from Washburn Street and one from Franklin Street. The right of way from Washburn Street is eighteen feet wide, fourteen feet of which are over Guiragossian's property. The right of way from Franklin Street is twelve feet wide. Guiragossian owns a two-family dwelling at 34 Washburn Street in the T-Two Family residential district. Her lot abuts the parcel.

Four industrial structures are situated on the parcel. The three buildings on the portion of the parcel closest to Guiragossian's property are not currently used. Past users of this portion of the land include a road construction firm, a machine company and, originally, a commercial laundry establishment. The remainder of the land is presently occupied and used by a business (Ross Industrial) that repairs heavy construction equipment, primarily forklift trucks. There is an existing industrial use, Ionics, on a 24,306 square foot lot (lot 10/37), abutting part of the parcel's northeastern boundary, and another industrial use (Swisstronics) abuts the parcel's southern boundary (lot 10/38).

Kruszewski has entered into purchase and sale agreements to acquire the locus, subject to his obtaining necessary variances and a special permit for his project. The project he proposes would involve the rehabilitation of two existing industrial buildings (one of which apparently has some historical and architectural significance) and the construction of two new buildings. The four buildings would be used as twenty-eight residential condominium units.[2] Forty-one onsite parking spaces, the minimum number required by the zoning by-law, would be

---

[2] The units would be thirteen one-bedroom units, twelve two-bedroom units and three three-bedroom units.

Guiragossian *v.* Board of Appeals of Watertown.

LEGEND:

— — — — —  *Kruszewski Locus*     - - - - - - - - - - -  *Guiragossian Locus*

provided. The condominium buildings would be located on the portion of the parcel most distant from the adjoining industrial property but closest to existing abutting residences and would be situated so as to screen the parking and most of the physical activity of the condominium occupants from the view of existing residential abutters. Restrictions requiring one-way traffic circulation were imposed on the project: traffic would enter the parcel over the Washburn Street right of way, and would exit over the Franklin Street right of way.

The board of appeals granted Kruszewski a use variance from § 5.1 of the zoning by-law to allow residential development on the parcel, which, as previously indicated, is a use prohibited in an I-Industrial district. The plans for the project and the narrow rights of way necessitated that the board grant additional variances from the requirements of the by-law for: yard dimensions (§ 5.30 of the by-law); distance between multiple buildings on a single lot (§ 5.0 [d]); parking aisle width (§ 6.10[d]); and interior landscaping of parking areas with more than twenty spaces (§ 6.10[f]). Because the parcel has no street frontage, a variance from the by-law's frontage requirements was also granted (§ 5.30). Finally, the board granted a special permit under §§ 9.03 and 9.11 of the by-law, which govern the construction or conversion of buildings designed to have four or more dwelling units.

1. We first restate some general principles governing review of decisions of local zoning boards granting variances.

On appeal to the Superior Court, the judge is required to hear the matter de novo and to determine the legal validity of the board's decision concerning the variance upon the facts found by the judge. G. L. c. 40A, § 17. *Josephs* v. *Board of Appeals of Brookline,* 362 Mass. 290, 295 (1972). *Garvey* v. *Board of Appeals of Amherst,* 9 Mass. App. Ct. 856 (1980). Since review is de novo, the judge is not restricted to the evidence that was introduced before the board, see *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676, 679 (1953), and the board's decision carries no evidentiary weight on appeal. *Devine* v. *Zoning Bd. of Appeals of Lynn,* 332 Mass. 319, 321 (1955). *Josephs* v. *Board of Appeals of Brookline, supra.*

General Laws c. 40A, § 10, as amended by St. 1977, c. 829, § 4B, authorizes a board of appeals to grant a variance only where it "specifically finds [a] that owing to circumstances relating to the soil conditions, shape, or topography of such land . . . and especially affecting such land . . . but not affecting generally the zoning district in which it is located, [b] a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, and [c] that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law." See *Warren* v. *Zoning Board of Appeals of Amherst,* 383 Mass. 1, 9 (1981).

"No person has a legal right to a variance and they are to be granted sparingly." *Damaskos* v. *Board of Appeal of Boston,* 359 Mass. 55, 61 (1971), and cases cited. At the hearing in the Superior Court the burden is upon the person seeking a variance, and the board granting one, to produce evidence that each of the discrete statutory prerequisites has been met and that the variance is justified. *Warren* v. *Board of Appeals of Amherst, supra* at 10. The judge, like the board of appeals may uphold the variance only if it can be expressly found that the statutory prerequisites have been met. *Josephs* v. *Board of Appeals of Brookline,* 362 Mass. at 292. Since the requirements for the grant of a variance are conjunctive, not disjunctive, a failure to establish any one of them is fatal. See *Blackman* v. *Board of Appeals of Barnstable,* 334 Mass. 446, 450 (1956).

2. In the present case, the principal objections pursued on appeal relate to the judge's conclusions that special circumstances relating to the parcel's shape differentiate the parcel from the rest of the district and give rise to substantial hardship. In reaching this conclusion, the judge noted that the parcel is roughly triangular, that it lacks street frontage, and that access to and from it is over limited rights of way. He found that the "parcel does not lend itself to commercial or retail use as there would be no view from the street or sidewalk" and that the parcel's "intru[sion] into a residential district [makes] the construction of dwelling units . . . more in harmony with the

surrounding area." The judge further determined that substantial hardship had been established because the parcel's lack of frontage has "discouraged buyers who might contemplate putting the parcel to industrial use,"[3] and because "one of the existing buildings is not suited to industrial development" since "[i]t is a multistory frame building which no longer fulfills the practical needs of today's industry."[4]

Applying the general principles stated above, we do not think the circumstances relied upon by the judge make out the "shape" prerequisite for the grant of a variance.[5] The configuration of the parcel is not significantly unusual, particularly when compared, for example, with the unique porkchop shaped lot at issue in *Paulding* v. *Bruins,* 18 Mass. App. Ct. 707, 708 (1984). As the testimony of Kruszewski's architect makes apparent, this is not a case where the irregular perimeter of a parcel would prevent the siting of a building that conforms to existing zoning. Indeed, if the parcel fronted on Washburn Street, the case would not be here. The real problem is not, therefore, with the parcel's shape. Rather the problem lies in the parcel's lack of street frontage, the limited access through narrow rights of way, and the necessity of approaching these access points through a residential area. Lack of frontage alone, however, is not generally enough to sustain the grant of a variance. See *Warren* v. *Zoning Board of Appeals of Amherst,* 383 Mass. at 11. Nor is the lack of more convenient or wider access decisive, particularly where the deficiency in access does not arise from the unusual shape of the parcel itself. By way of contrast, again with reference to the *Paulding* case,

---

[3] Here the judge noted evidence which "indicated that numerous efforts had been made to market the property for [industrial] use, to no avail."

[4] The judge also placed some weight on "[t]he existence . . . of a building of some historical significance" on the property.

[5] There is no dispute that the parcel does not have, in the words of c. 40A, § 10, any "circumstances relating to [its] soil conditions . . . or topography" which would support the grant of a variance. The judge did make a statement in his findings that the parcel "has certain unique characteristics which relate to its . . . topography." There is, however, nothing in the evidence which supports this statement.

*supra,* the elongated neck of the porkchop shaped lot, as an attribute of the land itself, resulted in such miniscule frontage and access that virtually ·all practical use of the property was foreclosed without a variance. Compare also *Wolfman* v. *Board of Appeals of Brookline,* 15 Mass. App. Ct. 112 (1983), where the parcel was shaped like a reverse "L" and affected by topographical and soil problems, which together justified the grant of dimensional variances.

We do not think that the variances can be sustained on the notion, relied upon by the judge, that the parcel intrudes into a residential district and that this combines with the parcel's shape so as to make the construction of residential units preferable to the development of the parcel for one of the several uses permitted as of right in its own district. It is doubtful that there is such an intrusion at all since the parcel is abutted on the east for some distance by the industrial use on lot 10/37 and on the south by the industrial use contained on lot 10/38. It has been frequently stated that "a district has to end somewhere," *Sullivan* v. *Board of Appeals of Belmont,* 346 Mass. 81, 84 (1963), and that some reduction in value or difficulty in developing a parcel for a permitted use may well be "a hazard . . . accompanying the ownership of property along or near zone boundaries," *Bouchard* v. *Ramos,* 346 Mass. 423, 426 (1963). "[C]ontiguity cannot be considered a 'condition' especially affecting the land within the meaning of G. L. c. 40A, [§ 10]." *Coolidge* v. *Zoning Bd. of Appeals of Framingham,* 343 Mass. 742, 745 (1962). Moreover, "[c]are should be taken lest the boundaries of a . . . district be pared down in successive proceedings granting variances to owners who from time to time through such proceedings find their respective properties abutting upon premises newly devoted to [incompatible] purposes." *Real Properties, Inc.* v. *Board of Appeal of Boston,* 319 Mass. 180, 184 (1946). See *Sullivan* v. *Board of Appeals of Belmont,* 346 Mass. at 84. These principles have relevance in this case. Upholding the variances may appear to offer an attractive opportunity to create a more appropriate buffer between zoning classifications. However, such an approach comes close to an argument that the carefully cir-

cumscribed administrative power to grant a variance can act as a substitute for the right of the town's legislative body to consider rezoning the parcel in the interest of harmonizing uses within contiguous districts. See *Coolidge* v. *Zoning Bd. of Appeals of Framingham.* 343 Mass. at 746.

Finally, we think the case is deficient in proof that would support a finding of substantial hardship. Kruszewski correctly points out that statutory hardship is usually present when a landowner cannot reasonably make use of his property for the purposes, or in the manner, allowed by the zoning ordinance. See *Rodenstein* v. *Board of Appeal of Boston,* 337 Mass. 333, 336-337 (1958); *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 551-552 (1962); *Sherman* v. *Board of Appeals of Worcester,* 354 Mass. 133, 135-136 (1968); *Broderick* v. *Board of Appeal of Boston,* 361 Mass. 472, 477-478 (1972). As we noted in *Kirkwood* v. *Board of Appeals of Rockport,* 17 Mass. App. Ct. 423, 429 (1984), such a predicament can be made out "by [a] showing that utilization of [the] land for a [permitted industrial use] would be economically unfeasible."

Kruszewski fails to recognize, however, the symbiotic relationship between the shape and hardship requirements set forth in § 10 and the level of proof necessary to justify a finding that any claimed hardship is "substantial." The present c. 40A, § 10, imposed new requirements for variances, namely, that the hardship alleged must arise from the shape of the locus or one of the other factors specifically referred to in § 10. An applicant for a variance must show that the land's shape, alone or in combination with other features of the land, prohibits development consistent with the ordinance. When the applicant makes such a showing, hardship can be found to exist. See, e.g., *Broderick* v. *Board of Appeal of Boston,* 361 Mass. at 477; *Wolfman* v. *Board of Appeals of Brookline,* 15 Mass. App. Ct. at 116.

Measured by these standards, Kruszewski's proof fails to establish adequate support for a necessary finding that the parcel's shape gives rise to a substantial hardship. Uses of the parcel, which is large, have been traditionally industrial in character, and have included a road construction firm, a

machine company, and a commercial laundry establishment. Industrial users, Ionics and Swisstronics, abut the parcel on two of its sides. The contention that access to the parcel through a residential district makes the property unique is undercut by the fact that access to Swisstronics' industrial operations is obtained by passage through Parker Street in the residential district.

Moreover, the architect for Kruszewski's project testified three times that it would be possible to build an industrial building on the parcel. He specifically stated that a 30,000 square-foot building with forty-five parking spaces and two truck loading bays could be accommodated on the site. The architect's conclusion that access and the parcel's configuration made industrial use of the parcel "very marginal" was limited by his having in mind, as he stated, industrial uses involving "heavy trucking [that would] be difficult in restricted access of this type." He did not take cognizance of the existing industrial use on the parcel or of the number of other uses permitted in the district, such as light industry, non-nuisance manufacturing, laboratories, offices, or motor vehicle repair. It has not been shown that any of these enterprises could not be conducted on the parcel. Indeed, many of them would not necessarily involve the large trucks or extensive traffic often associated with heavy industrial operations (and resented by existing abutters) and would not be disadvantaged by the parcel's limited access. Other deficiencies in the proof of hardship are set forth in the margin.[6] We conclude, for the reasons discussed, that

---

[6] Kruszewski has also failed to present financial evidence which would establish that industrial development of the locus would be "economically unfeasible." *Kirkwood* v. *Board of Appeals of Rockport,* 17 Mass. App. Ct. at 429. There was no testimony to show the price at which the land was, or could have been, marketed for uses permitted by the by-law. In the absence of any testimony as to price, there was no basis for the judge to conclude that the land could not, consistent with economic feasibility, be developed for a permitted use. See *O'Brian* v. *Board of Appeals of Brockton,* 3 Mass. App. Ct. 740 (1975).

Furthermore, while the judge relied on the failure of previous efforts to sell the property for industrial purposes as evidence of hardship, see note 3, *supra,* his findings, in addition to failing to take note of the lack of

the interrelated shape and hardship factors imposed by G. L. c. 40A, § 10, as prerequisites to the grant of a variance have not been shown.

3. The special permit was piggy-backed on the variances to permit residential development. Among other things, the permit imposed restrictions to minimize the potentially severe traffic problems that would be created by the project by converting the rights of way that permitted two-way traffic into one-way passages. There is no question that the validity of the special permit is dependent on the validity of the variances and, therefore, the special permit must also fail. As a consequence, other questions argued with respect to the special permit, including the possible misuse of the permit granting power to correct a likely problem of overburdening the easements creating the rights of way need not be considered.

The judgment is reversed. A new judgment is to be entered annulling the decision of the board of appeals as in excess of its authority.

*So ordered.*

---

evidence of sales prices, also do not take note of the fact that Kruszewski's witnesses testified only about attempts to market the 30 Rear Washburn portion of the locus alone and not the locus as a whole. Testimony from one of the current record owners of the locus, one Dominic Savarese, established that when he executed purchase and sale agreements on the separately owned Franklin and Washburn parcels in August and September, 1982, he already intended to propose a residential development for the site. Evidence before the judge indicated that the parcels were deeded to Savarese and his associates only in March and July of 1983, while the board's hearings on the Kruszewski proposal were held on June 6, 1983. The record also showed that the architects had been approached by Kruszewski to design the condominium project in early 1983 and that the site plans were completed by April 1, 1983. No evidence before the judge referred to any failed attempts to market the Franklin and Washburn properties jointly as a single industrial parcel during this period of acquisition by Savarese and his associates and of development of the Kruszewski proposal.