Garsh, J.
This is an appeal by Jane Sprogis (“Sprogis") pursuant to G.L.c. 40A, §17, from a decision of the Zoning Board of Appeals of the City of Fall River (“ZBA”) granting a variance to the defendants Manuel P. Louro and Fatima T. Louro (collectively referred to as “the Louros”). The variance permits the Louros to divide their parcel of land into four non-conforming lots. A trial de novo was held during which four witnesses testified. Prior to the trial, the parties entered into several stipulations of fact.
FINDINGS OF FACT
Based on all the credible evidence and reasonable inferences drawn from that evidence, the court finds the following facts:
Manuel P. Louro and Fatima T. Louro are the owners of a twenty-two acre parcel of land on Blossom Road in Fall River, Massachusetts (“the Locus”). Land owned by the plaintiff abuts and is down gradient to the Locus.
The Locus is within a Single Family Residence District, R-80. Section 21-91.5 of the City of Fall River Zoning Ordinance provides that the following restrictions shall apply to an R-80 District:
(1) Minimum lot area — 80,000 square feet.
(2) Minimum lot width and frontage — 300 feet each.
(3) Minimum front yard — 75 feet.
(4) Minimum side yard — 50 feet.
(5) Minimum rear yard — 75 feet.
The zoning ordinance does not deprive the Louros of economic use of their land. The Locus could accommodate, without any variance, the construction of four single family detached residences in conformity with the applicable dimensional zoning requirements. Indeed, without any variance, it could accommodate ten conforming house lots.
The Louros have four children. Their intent is to permit each one of their children to have a single family dwelling on the Locus. On July 18, 1997, the Louros petitioned the ZBA for permission to divide the Locus into five lots and erect a single family dwelling on four of the lots, leaving the remaining lot as open space. The petition sought that the frontage, width and area requirements in their residence district be waived, permitting dwelling lots of approximately one acre each.
On September 18, 1997, the ZBA voted unanimously to grant the petitioners’ request for four lots upon the condition that (1) the road be designed and constructed as required by the Planning Board, (2) the maximum number of buildable lots be four, and (3) the lots be approximately one acre in size with the fourth being approximately seventeen acres, only one acre of which shall be developed with the remaining land left as open space in its natural state pursuant to permanent restrictive covenants. The ZBA found that, owing to the circumstances relating to the long and narrow shape of the parcel, especially affecting the Locus but not affecting the Single Family Residence District in which it is located, a literal enforcement of the zoning ordinance would involve substantial hardship to the petitioners. The hardship cited by the ZBA was that the applicant, in order to meet the frontage and area requirements, would have to install over 2,200 feet of roadway and, with the variance, the road length need be only 1,400 feet, “thereby limiting the impact on the environment while providing substantial relief to the *262 petitioner.” The ZBA also determined that the proposed single family dwellings would not be detrimental to the neighborhood nor would they derogate from the intent and purpose of the zoning ordinance.
The Locus is shaped like a very long rectangle; it is approximately two hundred sixty feet wide. The narrow rectangular shape of the Locus means that the only way that the site can be developed is by a long service road. Manuel Louro is part owner of a construction company which installs and reconstructs roads and bridges.[2] It will cost approximately $700,000 to construct the four single family houses and, with the variance, approximately $140,000 to build the necessaiy roadway. If the variance were not granted, in order to construct four homes, an additional 800 linear feet of roadway would have to be constructed.[3] It costs $ 100 per linear foot to construct a roadway. Accordingly, the cost of completing the roadway would be approximately $80,000 more without a variance. The additional cost of achieving the result sought by the Louros in a manner that would conform with the zoning ordinance amounts to less than ten per cent of the total projected construction costs. Utilization of the Locus under existing zoning requirements is not economically unfeasible. Literal enforcement of the zoning ordinance would not result in a substantial financial hardship to the Louros. Denial of a variance would probably not result in complete non-use of the Locus.
Construction of an additional 800 feet of roadway would result in the removal of trees and upland vegetation that otherwise would be left undisturbed. The dominant tree species is red oak, while the shrub layer is sparse and poorly represented. The herbaceous layer is dominated by a mix of bracken fern, huckleberry, and spearmint. The Locus is not the site of plant species that are rare, threatened, or endangered. If the single family houses must comply with the zoning ordinance, more virgin land would be destroyed as the houses necessarily would be further down the road and deeper into the forest. Large tracts of open space in watersheds are desirable for maintaining water quality. The additional open space that would be lost by the construction of four homes in conformity with the zoning ordinance does not constitute a substantial hardship to the petitioner.
Neither the width nor the shape of the Locus is unique in the district. The property directly to the south of the Locus is also long and narrow. Indeed, it is narrower than the Locus. There is a rectangular piece of property somewhat north of the Locus whose width is approximately the same as the Locus, but it is not as long. In order for houses to be built on these other lots in conformity with the zoning ordinance, it would also be necessary to have a longer roadway than if the dimensional requirements were waived. There are no special circumstances or conditions relating to the soil condition, shape, or topography which affect the Locus but do not affect generally the zoning district in which it is located.
The variance would assure that seventeen acres of the Locus would remain undeveloped. No detriment to the public good results from issuance of the variance, and its issuance does not substantially derogate from the intent and purposes of the Fall River Zoning Ordinance.
A subdivision containing 23 house lots with significantly less than 80,000 square feet has been constructed several hundred feet to the north of the Locus. This subdivision has no impact upon the plaintiff.
The soil in the Locus is deep, well-drained, extremely stony fine sandy loam soil that occurs on uplands. The permeability of the soil is moderate at the surface and slow or veiy slow in the substratum. Slopes on the Locus vary from 0-15%. Because the plaintiffs property is down gradient from the Locus, any development of the Locus would result in an increase of water runoff to her property. The rate at which water runoff occurs is a function of the topography of the land and the amount of impervious surface. The construction of a roadway on the Locus will not affect the topography; it will increase the amount of impervious surface. Various engineering options are available to reduce peak runoff rates. Construction of a 2,200 foot roadway on the Locus would increase the amount of impervious surface, resulting in substantially more water runoff, than the construction of a 1,400 foot roadway.[4] Constructing homes on one acre lots, rather than on 80,000 square foot lots, does not increase the rate of runoff provided that the footprint occupied by the houses themselves and any asphalt or concrete surfaces, such as patios and driveways, remain the same.
Massachusetts Title V requirements for on-site septic disposal would have to be met should houses be constructed on the Locus. The standards required by law, when properly adhered to, are deemed sufficient by the state to mitigate the potential threat of pollution.
No significant harm will be done to the plaintiff as a result of the decision of the ZBA to grant a variance. Sprogis is not aggrieved by the decision of the ZBA.
RULINGS OF LAW
No person has a legal right to a variance and the discretion that may be exercised by a local zoning board is circumscribed by statute. Pendergast v. Board of Appeals of Barnstable, 331 Mass. 555, 557 (1954). G.L.c. 40A, §10 authorizes a Zoning Board of Appeals to grant a variance only where it:
specifically finds that owing to circumstances relating to the soil conditions, shape, or topography of such land :.. and especially affecting such land... but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve *263 substantial hardship, financial or otherwise, to the petitioner . . . and that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law.
These statutory requirements are conjunctive, not disjunctive, so that a failure to establish any one of them is fatal. Warren v. Zoning Board of Appeals of Amherst, 383 Mass. 1, 9-10 (1981).
When a variance is granted, the zoning board must set forth clearly the reasons for its decision that the applicable statutory requirements have been met. Josephs v. Board of Appeals of Brookline, 362 Mass. 290, 295 (1972). The court hears the matter de novo and determines the legal validity of the board’s decision on the facts as found by the court. Id. The court is “not restricted to the evidence that was introduced before the board.” Guiragossian v. Board of Appeals of Watertown, 21 Mass.App.Ct. 111, 114 (1985), rev. denied, 396 Mass. 1105 (1986). Indeed, the board’s decision carries no evidentiary weight on appeal. Josephs v. Board of Appeals of Brookline, supra at 295. The burden is on the person seeking a variance to produce evidence that each of the discrete statutory prerequisites has been met, and a judge may uphold a grant of a variance only upon expressly finding that each such statutory requirement is met. Josephs v. Board of Appeals of Brookline, supra at 292.
The Louros have failed to establish the first statutory prerequisite for the grant of a variance because they have not demonstrated special circumstances relating to the soil conditions, shape, or topography which affect the Locus but do not affect generally the zoning district in which it is located. G.L.c. 40A, §10. The narrow rectangular shape of the Locus is not unique when compared to surrounding parcels in the neighborhood. See Shacka v. Board of Appeals of Chelmsford, 341 Mass. 593, 595 (1961). Compare Paulding v. Bruins, 18 Mass.App.Ct. 707, 710 (1984) (concluding that the statute was satisfied where no other lot in the immediate neighborhood shared the special shape, location and configuration of the locus). Other parcels in the zoning district are long and narrow and, should they be developed, also would necessitate a roadway longer than would be required if they were shorter and wider.
Even if there were special circumstances affecting the Locus, the Louros have failed to demonstrate that literal enforcement of the Fall River Zoning Ordinance will result in “substantial hardship, financial or otherwise.” G.L.c. 40A, §10. Hardship within the meaning of the statute is present when a landowner cannot reasonably make use > .I the property for the purposes, or in the manner, allowed by the zoning ordinance. Kirkwood v. Board of Appeals of Rockport, 17 Mass.App.Ct. 423, 429 (1984). Thus, substantial hardship may exist where the property isunbuildablewithouttherequestedvariance. Adams v. Brolly, 46 Mass.App.Ct. 1, 5 (1998), rev. denied, 707 N.E.2d 1079 (1999); Paulding v. Bruins, supra at 711-12. In the present case, the Louros will be able to use the Locus for the purposes and in the manner allowed by the R-80 zoning requirements without a variance. Indeed, the Louros could build ten single family homes on the Locus without the need for a variance.
Further, it is well established that the statutory words “financial or otherwise” do not mean that deprivation of a potential economic advantage constitutes substantial hardship. Bruzzese v. Board of Appeals of Hingham, 343 Mass. 421, 424 (1962); Paulding v. Bruins, supra at 711. Nonetheless, substantial hardship may exist where the applicant demonstrates that utilization of the properly under existing zoning requirements would be economically unfeasible. Marashlian v. Zoning Board of Appeals of Newburyport, 421 Mass. 719, 726 (1996); Guiragossian v. Board of Appeals of Watertown, supra at 118. Economic unfeasibility is not measured by reference to financial hardship to the particular applicant. Rather, it must be a hardship affecting the parcel, one which would be experienced by anyone attempting to make a reasonable and permitted use of the locus. The 39 Joy Street Condominium Ass’n v. Board of Appeal of Boston, 426 Mass. 485, 490 (1998); McNeely v. Board of Appeal of Boston, 358 Mass. 94, 101 (1970); Wolfman v. Board of Appeals of Brookline, 15 Mass.App.Ct. 112, 116, rev. denied, 388 Mass. 1104 (1983). The work required to use the property under existing zoning requirements must be so expensive as to make it economically unsound or unreasonable to develop it, such that denial of a variance would probably result in complete non-use of the parcel. Cf. Sherman v. Board of Appeals of Worcester, 354 Mass. 133, 136 (1968); Simone v. Board of Appeals of Haverhill, 6 Mass.App.Ct. 601, 602 (1978).
In the present case, the additional $80,000 cost that would be entailed if the Louros were required to comply with the zoning ordinance, in the context of the entire proposed development, does not amount to “substantial hardship” within the meaning of the statute. See The 39 Joy Street Condominium Ass’n v. Board of Appeal of Boston, supra at 490 (concluding that an increased cost of $30,000 to $60,000 to use a condominium under existing zoning requirements was not substantial hardship); Kirkwood v. Board of Appeals of Rockport, supra at 430 (concluding that increased building costs of 15-20% do not constitute substantial hardship). Compare Wolfman v. Board of Appeals of Brookline, supra at 115-16 (concluding that substantial hardship existed where the unique topography and soil conditions of a lot would require an expenditure of $250,000 to $500,000 for foundation and bracing work before the lot could be used under existing zoning requirements).
*264 Moreover, the fact that the land would lose more trees and vegetation with a longer roadway does not constitute nonfinancial substantial hardship to the petitioner. Thus, the Louros have failed to establish the statutory requirement that literal enforcement of the Fall River Zoning Ordinance would result in substantial hardship.
The ZBA was correct that granting the variance sought by the Louros would not cause substantial detriment to the public good and would not derogate from the intent or the purpose of the zoning by-law. Indeed, the public would benefit by the petitioners’ agreeing, in exchange for a variance, to permanently maintain seventeen acres of their land as open space and by the reduced number of trees and vegetation that would have to be eliminated were a shorter roadway permitted to be constructed. In considering whether the construction permitted by the variance derogates from the intent and purpose of the zoning by-law, the deviation must be “substantial.” Unless the construction would significantly detract from the zoning plan for the district, the grant of the variance should be upheld. Cavanaugh v. DiFlumera, 9 Mass.App.Ct. 396, 400 (1980). See also Cary v. Board of Appeals of Worcester, 340 Mass. 748, 753 (1960) (noting that the court must appraise the effect of the variance on the entire neighborhood).
In the case at bar, the overall effect of the proposed construction, namely the construction of four single family homes upon approximately one acre of land with seventeen acres preserved as open space, upon other property within the same district would have no significant impact on the area and it would not substantially derogate from the intent and the purpose of the zoning ordinance. However, the fact that the there are significant benefits to be gained from the applicants’ proposal and that, on balance, the public interest may be better served by allowing than by denying a variance does not, in and of itself, justify the variance sought by the Louros.
Despite the fact that the Louros failed to establish that each of the discrete statutory prerequisites has been met, this court is without authority to annul the ZBA’s decision because the plaintiff is not an “aggrieved” person within the meaning of G.L.c. 40A, §17. Only a “person aggrieved” by a decision of a zoning board of appeals may appeal to the Superior Court. G.L. 40A, §17; Marashlian v. Zoning Board of Appeals of Newburyport, supra at 721. A court has no jurisdiction to consider a zoning appeal unless it is brought by an aggrieved person. Marotta v. Board of Appeals of Revere, 336 Mass. 199, 202-03 (1957); Barvenik v. Board of Aldermen of Newton, 33 Mass.App.Ct. 129, 131 (1992). Lack of standing to bring a zoning appeal may be raised at any point during litigation, including after adjudication on the merits and during appeal if the record shows lack of standing as a matter of law. Barvenik v. Board of Aldermen of Newton, supra at 131, n.6.
At the outset of the trial, the parties stipulated in the Statement of Agreed Facts contained in the Joint Trial Brief that “the Plaintiff has standing to bring this appeal.” In addition, in that section of the Joint Trial Brief designated a “brief statement that will educate the judge as to the specific claims and defenses that will be pressed at trial,” the parties stated that “the plaintiff is a direct abutter to the locus on the south and west and being aggrieved by the decision of the Zoning Board of Appeals, she has appealed to the Court.” Nevertheless, during closing arguments, the Louros argued that the plaintiff lacked standing to bring this appeal because she was not aggrieved by the ZBA’s decision.[5]
The statements in the Joint Trial Brief do not preclude the Louros from contesting standing after the close of all the evidence because standing is treated in this Commonwealth as an issue of subject matter jurisdiction. Ginther v. Commissioner of Insurance, 427 Mass. 319, 322 (1998); Barvenik v. Board of Aldermen of Newton, supra at 131. “No one party nor all parties can by their conduct confer jurisdiction over a cause on a court which has no jurisdiction.” Bergeron v. Bergeron, 287 Mass. 524, 526 (1934). In addition, the conclusory statements in the Joint Trial Brief that the plaintiff “has standing” and “is aggrieved” are not agreed upon facts but, rather, are conclusions of law. Parties generally cannot stipulate with respect to questions of law, which are the province of the court. T I Federal Credit Union v. Delbonis, 72 F.3d 921, 928 (1st Cir. 1995) (stipulation that federal credit unions are not government units concerned a matter of law, not fact). Admittedly, parties may stipulate to sufficient underlying facts to enable the court to conclude that a party has legal standing to bring a particular action. See, e.g., Shepherd v. Ledford, 962 S.W.2d 28, 33 (Tex. 1998) (stipulation that two individuals were common law spouses). However, that did not occur here. The only underlying facts to which the parties stipulated were that the plaintiff is a direct abutter to the Locus and that her property is down gradient to the Locus. Thus, the Louros are not precluded by the Joint Trial Brief from raising the issue of whether the plaintiff has standing to pursue the present appeal of the ZBA’s grant of a variance, and the court must independently analyze whether it has jurisdiction to hear this appeal under G.L.c. 40A, §17.
A plaintiff is a “person aggrieved” within the meaning of §17 if she suffers some infringement of her legal rights. Marashlian v. Zoning Board of Appeals of Newburyport, supra at 721. Although the term “person aggrieved” should not be read narrowly, a plaintiff must show an injury which is more than speculative and must offer credible evidence to substantiate her claims of injury. Id. at 721, 723.
Abutters entitled to notice of zoning board of appeals hearings enjoy a rebuttable presumption that they are persons aggrieved. Bell v. Zoning Board of Appeals of *265 Gloucester, 429 Mass. 551, 553 (1999); Marashlian v. Zoning Board of Appeals of Newburyport, supra at 721. Where the defendants challenge the plaintiffs status as aggrieved and offer evidence supporting their challenge, standing becomes a question of fact to be decided by the trial judge on all the evidence presented, with no benefit to the plaintiff from the presumption. Bell v. Zoning Board of Appeals of Gloucester, supra at 553-54; Marashlian v. Zoning Board of Appeals of Newburyport, supra at 721; Watros v. Greater Lynn Mental Health & Retardation Ass’n, Inc., 421 Mass. 106, 111 (1995).
Sprogis, as an abutter to the Locus, is presumed to be aggrieved by the ZBA’s grant of the variance. She argues that because her land is located down gradient from the Locus, the construction permitted by the variance will subject her land to the effects of runoff.[6] The evidence offered by the defendants established that any use of the Locus for the purposes permitted in the zoning district would entail the construction of a road and that the construction of a road of any length on the Locus would increase runoff to some degree. Various engineering options are available to reduce peak runoff rates. There was no evidence that the runoff that would result from the variance would adversely impact the plaintiffs property by, for example, exacerbating drainage problems. See Barvenik v. Board of Aldermen of Newton, supra at 135-36. Nor was there evidence that four houses on one acre lots rather than on 80,000 square foot lots pose more of a risk to downgradient land. The Louros’ expert specifically testified that density, as opposed to the amount of impervious surface, did not affect the runoff rate. The report of the defendants’ expert, which was entered into evidence without objection, also contradicts a speculative fear of pollution from the development permitted by the variance. The defendants introduced sufficient evidence supporting their challenge to standing to destroy the presumption of standing.
Moreover, the Louros presented uncontroverted evidence that construction of an additional 800 feet of roadway on the Locus will increase the amount of impervious surface, resulting in substantially more water runoff than if a 1,400 foot roadway were constructed. Thus, development of the Locus under the variance would result in a net decrease in the amount of runoff to the plaintiffs property. In order to establish standing, the plaintiff is not required to show that she would be more adversely affected by the proj ect permitted under the variance than by a use of the properly permissible as of right. Marashlian v. Zoning Board of Appeals of Newburyport, supra at 724. However, the magnitude of the threat of harm from a use permissible as of right is one factor that may be considered in deciding standing. Id.
Upon all the evidence presented, Sprogis has failed to substantiate with credible evidence a reasonable likelihood of any tangible harm to her property as a result of the construction of the four houses under the variance.[7] Thus, she is not a “person aggrieved” within the meaning of G.L.c. 40A, §17. Accordingly, the plaintiff lacks standing to bring the present appeal, and this court lacks jurisdiction to nullify the decision of the ZBA.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs complaint for judicial review of the decision of the Zoning Board of Appeals of the City of Fall River granting a variance to Manuel P. Louro and Fatima T. Louro be DISMISSED and that judgment be entered for the defendants.

 I credit the testimony of Marcel Louro that his father would have to pay the same for road construction services provided by the family owned business as would an independent third party.

 Although Manuel Louro testified that, without the variance, it would only be necessary to construct an additional six hundred feet of roadway, I credit the testimony of his son, a civil engineer with the family business who has experience in pricing and bidding, that an additional eight hundred feet of roadway would have to be constructed.

 The defendant’s expert was unable to estimate the degree by which an additional 800 feet of roadway would increase the water runoff rate.

 Prior to trial, on the ground that neither party intended to call the plaintiff as a witness, the court denied plaintiffs emergency motion to continue the trial until after the plaintiffs return from vacation. After the Louros raised the issue of standing in the closing, the court indicated a willingness to reopen testimony to hear from Sprogis upon her return or to take other evidence on the issue of standing. Counsel for Sprogis opted, instead, to submit a supplemental memorandum of law.

 No expert or other witness testified for the plaintiff.

 The plaintiff has not alleged any other injuries legitimately within the scope of the zoning laws, such as decreased property value.