JAMES KARET & another[1] vs. ZONING BOARD OF APPEALS
OF WORCESTER & others.[2]

No. 87-1234.

Worcester. May 24, 1988. — June 7, 1989.

Present: ARMSTRONG, KAPLAN, & BROWN, JJ.

*Zoning*, Variance, Frontage. *Practice, Civil*, Zoning appeal.

A zoning board of appeals exceeded its authority in granting a variance to
construct a single family dwelling on a lot with less than the minimum
80 feet of frontage on a public way required by a zoning by-law, where
the variance was not warranted by any hardship attributable to the lot's
shape, soil conditions, or topography, and where the circumstance creat-
ing the hardship was itself the result of a transfer that violated the
applicable zoning requirements for buildable lots. [440-441]

CIVIL ACTION commenced in the Superior Court Department
on May 1, 1986.

The case was heard by *William C. O'Neil, Jr.,* J.

*Beth C. Schuster* for the plaintiffs.

*John W. Spillane* for Peter Kyriakakos & another.

*M. Allison Hamm,* Assistant City Solicitor, for Zoning Board
of Appeals of Worcester.

ARMSTRONG, J. The Karets are the owners of one of seven
house lots on Denison Road in Worcester, the rear (westerly)
lot lines of which abut the long (640.20 feet) easterly sideline
of a two and one-quarter or two and one-half acre house lot
owned by James and Sophie Kaltsas. The Kaltsases' lot fronts
on Flagg Street for a distance of 140 feet. The Kaltsases propose
to divide their lot in two, keeping the house and a lot with
eighty feet of frontage on Flagg Street and a depth of roughly

---

[1] Evelyn Karet.

[2] Peter Kyriakakos, Christine Kyriakakos, and the city of Worcester.

370 feet. They have given their daughter Christine Kyriakakos and her husband Peter Kyriakakos an option to acquire the rear lot, together with a strip of land forty feet wide connecting the rear lot to Flagg Street.[3] The Kyriakakoses were granted a variance to construct a residence on the rear lot — a variance made necessary by the fact that the zoning ordinance requires frontage of eighty feet for a house lot in the particular zoning district. The Karets, whose rear property line would abut the proposed Kyriakakos lot for a distance of roughly seventy feet, objected before the board of appeals and filed the instant complaint to have the board's decision overturned.[4]

The variance cannot stand. It is clear now, if it was not at the time the judge heard the case, that a deficiency in the frontage of a lot is not a "circumstance[] relating to the soil conditions, shape, or topography of such land" that will satisfy one of the several statutory prerequisites for a variance under G. L. c. 40A, § 10, as amended through St. 1984, c. 195. *Warren* v. *Zoning Bd. of Appeals of Amherst*, 383 Mass. 1, 11 (1981). *Guiragossian* v. *Board of Appeals of Watertown*, 21 Mass. App. Ct. 111, 116 (1985). *DiCicco* v. *Berwick, ante* 312 (1989). It is equally clear that a lot can not qualify for a variance if the circumstance creating the hardship is itself the result of a transfer that violates in some respects applicable zoning requirements for buildable lots. *Raia* v. *Board of Appeals of North Reading*, 4 Mass. App. Ct. 318, 322 (1976), and cases cited. *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. 802, 803-804 (1981). *Gordon* v. *Zoning Bd. of Appeals of Lee*, 22 Mass. App. Ct. 343, 349-350 (1986). *Shafer* v. *Zoning Bd. of Appeals of Scituate*, 24 Mass. App. Ct. 966, 967 (1987). *DiCicco* v. *Berwick, supra.*

---

[3] The forty-foot wide strip would run along the westerly side of the Kaltsas (front) lot. The Kyriakakoses do not intend to use the strip for a driveway; it apparently contains a stream that would make construction of a driveway expensive. Rather, they intend to use the Kaltsases' existing driveway, adding an extension.

[4] As abutters the Karets were sent notice of the hearing before the board. They are presumed to have standing as persons aggrieved. *Waltham Motor Inn, Inc.* v. *LaCava*, 3 Mass. App. Ct. 210, 214 (1975). At trial neither the board nor the Kyriakakoses challenged their standing. The Kyriakakoses posttrial challenge, continued on appeal, came too late.

The problem the Kaltsases face is one that recurs in our cases: how to make use of spacious rear land to build a second dwelling where the frontage is insufficient for two dwellings and where the use of the rear land for only one additional dwelling does not justify the expense of road construction and other amenities that are required for subdivisions. See, e.g., *Arrigo* v. *Planning Bd. of Franklin, supra* (attempt to put two houses on ten-acre lot with 386 feet of frontage; required frontage per house, 200 feet); *Gordon* v. *Zoning Bd. of Appeals of Lee, supra* (attempt to locate a single family house on five acres of primarily rear land with a frontage of 100 feet; required frontage, 125 feet). The Kaltsases, in a residential zoning district that requires only 10,000 square feet of area per dwelling unit, could lawfully use their acreage for a subdivision of perhaps seven or eight dwellings. Planning boards in some towns, to encourage less dense development and preserve more open space (as in *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. at 804), may elect to follow the suggestion made in *Gordon* v. *Zoning Bd. of Appeals of Lee*, 22 Mass. App. Ct. at 351-352 n. 8: "The planning board is given ample authority by G. L. c. 41, § 81R, as amended by St. 1955, c. 411, § 1, to waive strict compliance with its rules and regulations in light of 'conditions limiting the lots upon which buildings may be erected and the number of buildings that may be erected on particular lots . . . .' Conditions guaranteeing that the road would serve only one residence would surely warrant reasonable adjustments to road specifications drafted in contemplation of their serving developments." A planning board may not, of course, grant a variance; but its authority to approve subdivision plans includes the possibility of creating new frontage that can support a desired residence lawfully.

The judgment is reversed, and a new judgment is to be entered declaring that the decision of the board was in excess of its authority and is annulled.

*So ordered.*