STEVEN FELDMAN & another[1] *vs.* BOARD OF APPEAL OF
BOSTON & another.[2]

No. 89-P-1050.

Suffolk. June 8, 1990. - September 27, 1990.

Present: KASS, KAPLAN, & PORADA, JJ.

*Zoning*, Variance, Frontage, Bond. *Practice, Civil*, Zoning appeal, Bond.
*Boston.*

Where, in view of the zoning issue presented, plaintiff homeowners were
virtually certain to prevail on their appeal from a variance granted to a
neighboring property owner by the board of appeal of Boston, the
judge, acting under St. 1956, c. 665, § 11, should not have required the
plaintiffs to file a surety bond in the amount of $10,000 but should have
required a bond for only a nominal amount. [297-299]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 16, 1988.

The case was heard by *John C. Cratsley*, J.

*Howard P. Speicher* for the plaintiffs.

*Thomas P. McCusker, Jr.*, for James McKernan.

KASS, J. When the board of appeal of Boston granted
James McKernan a variance to divide his property at 57
Mount Vernon Street, West Roxbury, into two undersized
lots, the plaintiffs Feldman and McCaffrey sought judicial
review. A judge of the Superior Court, acting under St.
1956, c. 665, § 11, required the plaintiffs to file in court a
surety bond in the amount of $10,000[3] against which Mc-
Kernan might recover damages and costs should the decision
of the board ultimately be upheld. The plaintiffs, claiming

---

[1]Paul McCaffrey.

[2]James McKernan.

[3]This was less than a $25,000 bond requirement originally set by the
judge.

inability, did not file the bond and, upon motion, their action was dismissed. We decide that in view of the zoning issue presented, on which the plaintiffs were virtually certain to prevail, the judge should have required a bond for only a nominal amount. We, therefore, vacate the judgment of dismissal.

1. *The underlying zoning case.* McKernan owned a lot (the "locus") which contained 15,295 square feet and had frontage of 100 feet. In the S-.5 (single family residence, floor area ratio of .5) zoning district which pertained to the locus, the minimum lot size is 6,000 square feet and the required minimum street frontage and lot width is sixty feet. A two-story house and a two-car garage occupied the westerly portion of the locus. McKernan sought — and received — a variance to divide the lot in two, one of which (to contain the existing structures) would be 51.7 feet wide; the second (on which an additional house and garage would be built) to be 48.3 feet wide. The resulting lots, therefore, were undersized as to frontage and width.

The invalidity of just such a variance was recently the subject of discussion in *Karet* v. *Zoning Bd. of Appeals of Worcester*, 27 Mass. App. Ct. 439, 440-441 (1989). We held in that case "that a deficiency in the frontage of a lot is not a 'circumstance[] relating to the soil conditions, shape, or topography of such land' that will satisfy one of the several statutory prerequisites for a variance . . . ." See also *Warren* v. *Zoning Bd. of Appeals of Amherst*, 383 Mass. 1, 11 (1981); *Guiragossian* v. *Board of Appeals of Watertown*, 21 Mass. App. Ct. 111, 116 (1985); *DiCicco* v. *Berwick*, 27 Mass. App. Ct. 312, 314-315 (1989) (applied Boston's zoning law). The *Karet* opinion emphasized particularly that a lot cannot qualify for a variance based on subminimum dimensions when the undersized lots were created by transfer of land from a once conforming lot. See, in this regard: *Raia* v. *Board of Appeals of N. Reading*, 4 Mass. App. Ct. 318, 322 (1976), and cases cited; *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. 802, 803-804 (1981); *Gordon* v. *Zoning Bd. of Appeals of Lee*, 22 Mass. App. Ct. 343, 349-

350 (1986); *Shafer* v. *Zoning Bd. of Appeals of Scituate*, 24 Mass. App. Ct. 966, 967 (1987); *Karet* v. *Zoning Bd. of Appeals of Worcester*, 27 Mass. App. Ct. at 440-441.

On the merits, therefore, the plaintiffs enjoyed virtually certain prospects of success.

2. *The bond provision.* A bond provision designed to discourage frivolous and vexatious appeals from the grant of zoning relief and to indemnify persons who have received zoning relief against all damages and losses flowing from such appeals has long been a feature of the special laws relating to Boston zoning. See St. 1924, c. 488, as amended by St. 1941, c. 373, § 18 (the old enabling act), and St. 1956, c. 665, § 11 (the new enabling act).

In the leading case of *Damaskos* v. *Board of Appeal of Boston*, 359 Mass. 55, 64 (1971), the court said that the countervailing considerations which are to guide judicial discretion in determining the amount of a bond are: (1) the objective of inhibiting frivolous and vexatious appeals, as already mentioned, versus[4] (2) not unreasonably inhibiting meritorious appeals from variances or conditional uses (the Boston act's vocabulary for what under G. L. c. 40A is known as a special permit) which are unlawfully granted.

Without a careful balancing of interests, however, an appellant with a meritorious appeal might be barred from bringing a claim if the appellant is without resources to pay for, and provide collateral for, a substantial bond. *Damaskos* v. *Board of Appeal of Boston*, 359 Mass. at 58. See *Kargman* v. *Dustin*, 5 Mass. App. Ct. 101, 113 (1977). The *Damaskos* opinion, at 65, requires the judge who sets the bond amount to investigate carefully whether a substantial bond would preclude a meritorious review unjustly. The judge is to weigh the plaintiff's resources against the potential harm to the beneficiary of the challenged zoning relief. *Jack* v. *Board of Appeal of Boston*, 15 Mass. App. Ct. 311, 317-318 (1983). This does not mean a person challenging a

---

[4]See *Begley* v. *Board of Appeal of Boston*, 349 Mass. 458, 460 (1965), and *McNeely* v. *Board of Appeal of Boston*, 358 Mass. 94, 108-110 (1970).

grant of a variance or exception need not put up a bond just because that person cannot afford one;[5] the resources of the challenger are only one factor in the equation and the right of the property owner who obtained relief to be free from vexation and delay is equally important. *Id.* at 317. Cf. *Playboy of Boston, Inc.* v. *Board of Appeal of Boston,* 359 Mass. 66, 67-68 (1971).

Ideally, the bond requirement will serve to derail promptly hapless appeals; the requirement is not designed to give the holder of, e.g., a variance an automatic edge irrespective of the merits of the plaintiff's appeal. When, as here, there is a highly meritorious appeal, the court should not set a bond that prevents the plaintiffs from litigating their claim. Here, the plaintiffs are individual homeowners and, at least on their affidavits, a $10,000 bond (for which, it is not disputed, they would have to post full collateral with a surety) taxes their resources beyond their capacity. When the merits of the plaintiff's case are so exceptionally strong the amount of the bond should be in the nominal range which, for purposes of this case, we think to be $1,000 or less. See *Damaskos* at 64 and n.9 Cf. *Donnelly* v. *District Court of Newton,* 3 Mass. App. Ct. 746, 747 (1975).

The judgment of dismissal for failure to post the bond is vacated. The case is remanded to the Superior Court for the setting of a bond in accordance with this opinion. If the plaintiffs thereupon post a bond as ordered, the case shall stand for disposition on the merits.

*So ordered.*

---

[5]That would grant a license to the impecunious to launch frivolous and vexatious appeals.