# DECISIONS

## OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

MITCHELL L. ADAMS *vs.* JAMES G. BROLLY, individually and as trustee,[1] & another.[2]

No. 97-P-0159.

Norfolk. February 18, 1998. - December 3, 1998.

Present: GREENBERG, LAURENCE, & DREBEN, JJ.

*Zoning,* Variance, Frontage.

A property owner, who took all necessary steps to bring a lot into conformance with the municipal zoning by-law's frontage requirements, but was unable to proceed without a variance after the Metropolitan District Commission took a portion of the proposed lot by eminent domain, was entitled to the variance under G. L. c. 40A, § 10, where the hardship to the owner created by the taking was not self-imposed. [4-6] LAURENCE, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on August 27, 1993.

[1]Of the Westfield Realty Trust.
[2]Zoning board of appeals of Dedham.

The case was heard by *Vieri Volterra,* J., on a statement of agreed facts.

*Kevin F. Hampe* for the plaintiff.

*Louis J. Caccavaro, Jr.,* for the defendant.

GREENBERG, J. Prior to July 28, 1992, James G. Brolly owned a 9.9 acre parcel of land in Dedham that he proposed to divide into four lots. In March, 1993, after he secured an "approval not required" endorsement for his proposal from the planning board of Dedham (planning board), see G. L. c. 41, § 81P, the Metropolitan District Commission (MDC) proposed a taking that precluded the consummation of a land swap agreement by which Brolly had planned to secure the necessary frontage for one of the lots (locus). Following the grant of a variance to Brolly by the zoning board of appeals (board), the plaintiff, Mitchell Adams, an abutter to the east of the locus, took an appeal under G. L. c. 40A, § 17. A judge of the Superior Court, upon a stipulated statement of agreed facts and after having taken a view of the locus, found that the board did not exceed its authority in granting the requested variance. We affirm.

We set out the facts that are essential to our decision. The locus consists of 5.894 acres of land with 98.54 linear feet of frontage along Westfield Street in Dedham. It was originally acquired by Brolly in 1985 as part of the original 9.9 acre parcel. Brolly wanted to divide the 9.9 acres into four smaller parcels that included one lot on which his residence stood. His intention was to build a house for himself on one of the newly created lots. There is appended to our opinion a plan, incorporating the salient features, filed with the Norfolk County Registry of Deeds on July 28, 1992 (plan), that depicts the four lots.

As laid out on the plan, lot 2 (the locus, upon which Brolly intended to build his new residence) did not conform to the dimensional requirements of Section VI-1 of Dedham's zoning by-law. It fell short of the 125-foot frontage requirement by 26.46 feet. In order to comply with the by-law, Brolly reached an agreement to exchange land with an abutter, Alexander Mc-Neil, who owned land bordering the westerly boundary of lot 2.

Brolly agreed to exchange parcels B and C, as shown on the plan, for McNeil's lot 30, also shown on the plan. The swap would give Brolly's lot 2 the necessary frontage on Westfield Street so that it conformed to the by-law.

With the agreement in place, and prior to any conveyance of

the lots, Brolly and McNeil, the intended owner of lots B and C, filed joint applications with the planning board for endorsements, pursuant to G. L. c. 41, § 81P, as appearing in St. 1963, c. 363, § 1, that "approval under the subdivision control law [is] not required." On July 26, 1992, the planning board approved the endorsement for McNeil's application but rejected the plan depicting the division of Brolly's land. As a result of the planning board's failure to record its action pursuant to G. L. c. 41, § 81P, however, the plan was constructively endorsed.

On August 7, 1992, only after obtaining the constructive endorsement of his plan, Brolly conveyed lot 1, which contained his residence, to Teresa Tan. With that conveyance in place, the Brolly-McNeil swap was yet to be completed. It required McNeil to clear his title to lot 30 of certain mortgage interests. The clearing of McNeil's title took longer than they foresaw.

In March, 1993, seven months after the conveyance of lot 1, and before the exchange with Brolly went through, McNeil was informed by the MDC that it was undertaking a comprehensive park land acquisition program and that "[t]he land currently owned by you . . . has been identified as critical for this program, and therefore has been included on the listing of properties which the Real Property Office must prepare for acquisition. It is planned that this property will be acquired, subject to the approval of the appropriate government agencies . . . either within Fiscal Year 1993 . . . or within Fiscal Year 1994 . . . ."

Faced with the grim and unforeseen prospect of not being able to comply with frontage requirements to build on lot 2, Brolly sought to avail himself of the variance provisions of G. L. c. 40A, § 10.[3]

At the hearing before the board, abutters and neighbors, including the plaintiff Adams, made certain objections. They complained about increased traffic. The board dismissed these objections and on August 11, 1993, issued a written decision

---

[3]Section 10 of G. L. c. 40A, as appearing in St. 1975, c. 808, § 3, provides in part that a variance may be granted where the board of appeals finds, among other things, that as to "particular land . . . that owing to circumstances relating to the soil conditions, shape, or topography of such land . . . but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the by-law would involve substantial hardship" to the landowner.

granting Brolly a frontage variance for lot 2. A 4-to-1 majority of the board "felt that [Brolly] did, in fact, have a substantial hardship . . . in that there exists a 'pork chop' lot unlike any other lot in the neighborhood." They noted that the lot is unbuildable without the variance and "appears to have no use other than that of a residential home site."

On February 10, 1994, the MDC, in fact, took McNeil's property by eminent domain, including lot 30 from which Brolly had expected to create the necessary frontage.

The issue on appeal is whether the hardship alleged by Brolly has been "self-created." Our starting point is the well-established principle in our cases prohibiting self-imposed hardships as a basis for obtaining a variance. See *Raia* v. *Board of Appeals of N. Reading*, 4 Mass. App. Ct. 318, 322 (1976); *Gordon* v. *Zoning Bd. of Appeals of Lee*, 22 Mass. App. Ct. 343, 350 (1986); *Karet* v. *Zoning Bd. of Appeals of Worcester*, 27 Mass. App. Ct. 439, 440 (1989). Cf. *Feldman* v. *Board of Appeal of Boston*, 29 Mass. App. Ct. 296, 297 (1990).

Typically, this situation arises when the owner of a large tract of land conveys to another a portion of the land that does not meet either the size or frontage requirements of the existing zoning code with the result that the new owner cannot build without relief from the regulations. See, e.g., *Raia* v. *Board of Appeals of N. Reading, supra*. It may also arise when a landowner conveys out conforming lots and retains for himself a nonconforming lot. See, e.g., *Shafer* v. *Zoning Bd. of Appeals of Scituate*, 24 Mass. App. Ct. 966, 967 (1987).

This is not the situation here. Brolly anticipated that the newly created lot 2 would have less than the required 125 feet of frontage. He took all the necessary steps to bring the lot into conformance with the zoning by-law's frontage requirement. As we have stated, it was not until after he learned that his plan was endorsed by the planning board that he conveyed lot 1 to Tan. Prior to the proposed taking no application for a variance was filed. Only after notice was received of the proposed MDC taking, when it was no longer possible to obtain lot 30 from McNeil, did Brolly apply for a variance.

The present case is a variant on our decision in *Paulding* v. *Bruins*, 18 Mass. App. Ct. 707, 710 (1984). There the defendant owned a lot of pork chop shape that existed prior to the adoption of the zoning by-law in the town of Plymouth. The defendant intended to construct a single family residence despite

the lot's frontage not conforming to the zoning by-law require-
ments. We affirmed the zoning board's grant of a variance based
upon the evidence that the size of the lot exceeded most of the
surrounding lots by a significant amount and that the existing
topography would accommodate a driveway from a public way
to the larger portion of the lot. Without a variance of this sort,
the lot would remain unbuildable. *Id.* at 711-712. As in the
*Paulding* case, here the board granted relief to Brolly because
the triggering event of hardship occurred through no fault or
subterfuge of the owner.

For his part, the plaintiff argues that *Gordon* v. *Zoning Bd. of
Appeals of Lee*, 22 Mass. App. Ct. at 343, is controlling. In that
case, the owner subdivided between eight and nine acres of land
and sold the front portion, retaining for himself a rear parcel of
over five acres that lacked sufficient frontage to conform to the
town's zoning by-law. When he sold the front portion of the
land, the owner intended to use the nonconforming rear lot
solely as a wood lot and had no further plans for the land. *Id.* at
345. Over six years later, when a prospective buyer proposed to
construct a residence on the rear lot, the zoning board allowed
the owner's variance request and the Superior Court affirmed
that decision. This court reversed and held that the hardship to
the owner was not sufficient to allow for the grant of a variance,
because the earlier conveyance was accomplished with
knowledge that the lot in question would not conform to the
minimum frontage requirements of the by-law.

The court in *Gordon* distinguished *Paulding* v. *Bruins, supra.*
The cases stand together consistently. In *Gordon*, 22 Mass. App.
Ct. at 350, we held that a variance was not warranted because
the owner could not demonstrate a "hardship" within the mean-
ing of G. L. c. 40A, § 10, where he himself had created the
nonconforming lot. See *Warren* vs. *Zoning Bd. of Appeals of
Amherst*, 383 Mass. 1, 12-13 (1981) ("The creation of a
nonconforming parcel by . . . conveyance does not, without
more, entitle the purchaser to a variance"). Similarly, the court
in *Paulding* v. *Bruins*, 18 Mass. App. Ct. at 711-712, noted both
that the owners were "not attempting to subdivide their lot to
achieve greater financial gain" and that the hardship involved
related to the land itself.

Here, it was not Brolly's transfer of lot 1 that created the
need for a variance. He acted reasonably in making sure that he
had the planning board's endorsement for the lots, and that he

had in place, prior to the sale to Tan, an arrangement that would make lot 2 a conforming lot. The taking by the MDC prevented the implementation of the planned exchange, and the judge made the requisite findings under *Paulding* v. *Bruins, supra.* Cases such as *Tsagronis* v. *Board of Appeals of Wareham,* 415 Mass. 329 (1993); *Arrigo* v. *Planning Bd. of Franklin,* 12 Mass. App. Ct. 802 (1981); *Guiragossian* v. *Board of Appeals of Watertown,* 21 Mass. App. Ct. 111, 116 (1985); *Karet* v. *Zoning Bd. of Appeals of Worcester,* 27 Mass. App. Ct. at 440, relied upon by the dissent, may be distinguished. In those cases the nonconforming lots were created with knowledge that variance relief would be required for development. Unlike the applicants for variances in those cases, Brolly's hardship was caused by an extrinsic act of a public authority not within his control.

It is correct, as Adams points out, that Brolly could have postponed the division of his property and the sale of the nonconforming lot until after he procured the abutting slice of McNeil's land. However, even if the transaction had been concluded in the reasonably anticipated manner, the taking would have occurred and created the frontage deficiency in any event. The hardship created by the MDC's acquisition of the McNeil property was not of Brolly's own making.

The validity of just such a variance was the subject of a decision by the Connecticut Supreme Court in *Smith* v. *Zoning Bd. of Appeals of Norwalk,* 174 Conn. 323, 327-328 (1978). The court held in that case that "[s]urely there is a clear case of uncommon hardship beyond the control of a property owner when the state seeks to condemn a portion of his or her land and thereby render it nonconforming to a minimum lot area restriction." Similarly, in this case Brolly satisfied that variance requirement because the MDC's land taking rendered the lot unbuildable.

*Judgment affirmed.*

Adams *v.* Brolly.

APPENDIX.

LAURENCE, J. (dissenting). The majority properly recognize the "well-established principle" that a property owner's self-imposed hardship cannot serve as the basis for obtaining a variance, as well as the fact that Brolly knowingly created the nonconformity when he subdivided his property and transferred one of the newly created lots, leaving his remaining lot with insufficient frontage. They attempt to save this situation from application of that principle by emphasizing, as did the trial judge, Brolly's good faith — he "did not create the [nonconforming] lot in anticipation of being granted a variance," and he took all the necessary steps to bring the lot into conformance with the frontage requirement, but was thwarted by an event beyond his control, the MDC taking. I am unpersuaded that either the law or the facts of this case support their effort.

The instant case is essentially indistinguishable from *Gordon* v. *Zoning Bd. of Appeals of Lee*, 22 Mass. App. Ct. 343 (1986). There, we reversed the grant of a variance for a "pork chop" shaped lot with inadequate frontage which had been created as a remnant when the owner sold a portion of his property for its subdivision into several conforming lots. We did so on the basis of a long line of decisions holding that "the creation by conveyance of an unusually shaped, nonconforming parcel under then existing zoning regulation does not entitle one to a variance." *Id.* at 351. That oft-repeated holding applies equally to Brolly's situation.

The *Gordon* opinion also took note of the fact that, at the time the owner had sold his land and created the nonconforming parcel, he had no further plans to use it except as a wood lot; and that he attempted to convey it only six years later, when an "unexpected opportunity" to sell arose. *Id.* at 345. An additional lesson of *Gordon*, therefore, is that the absence of an intention on the part of the owner, at the time he knowingly creates an unusually shaped, nonconforming parcel, to obtain a variance for the parcel is irrelevant, as the express language of G. L. c. 40A, § 10, would suggest.

The facts here do not appear to justify the majority's conclusions that Brolly did everything he could to cure the unfavorable characteristics of the locus which he had created and that his ultimate inability to proceed was of the MDC's, not his, making. Most obviously, he could have delayed any sale (and nothing in the record suggests any reasons why he could not

have) until he had procured the McNeil property.[1] He could also have awaited the actual clearance of title on McNeil's lot before creating the nonconformity by his August 7, 1992, sale of a portion of his lot.[2] In this connection, I do not agree that the underlying facts justify the trial judge's and the majority's finding that the failure to implement the land swap transaction and the "hardship" that rendered Brolly's lot unbuildable were attributable to the ultimate MDC taking, which occurred over a year and one-half after the transaction was agreed upon.[3] The parties' expectations seem rather to have foundered because of the perceived title or encumbrance problems and their failure or inability to resolve them, despite many months of opportunity

[1] The majority's observation that, even if Brolly had waited to sell until he had acquired the McNeil property, the taking would have occurred in any event and was the real cause of Brolly's "hardship" misses the point. It was Brolly's obligation to demonstrate satisfaction of all the G. L. c. 40A, § 10, prerequisites in order to obtain a variance. While relevant to the "substantial hardship" requirement, the fact of the taking was irrelevant to the separate condition of unique "soil conditions, shape, or topography." The statutory prerequisites for a variance under G. L. c. 40A, § 10, are conjunctive and not disjunctive, so that failure to satisfy even one defeats the variance. See *Gordon*, 22 Mass. App. Ct. at 348, 349 n.6.

[2] The record is silent regarding the precise nature of McNeil's title problems or the reasons for his inability to clear the title of "mortgage interests." Nor do we know why Brolly could not have himself "cleared" the title or taken subject to the "mortgage interests," with some form of title insurance or indemnity agreement. (We note, as to these questions, that almost nine months passed between the time of the Brolly-McNeil land swap agreement and the March, 1993, receipt of the MDC's notice of "a possibility of a taking by eminent domain," with no record explanation of what, if anything, Brolly and McNeil were doing to resolve the title problems during that lengthy period.) The record is also silent as to the reasons Brolly proceeded to sell part of his then-conforming lot virtually on the heels of obtaining constructive approval of his subdivision plan, and presumably with knowledge of the existing title problems as well as the zoning consequences of his sale. On its face, his situation appears indistinguishable from that in *Gordon*, *supra* at 350, where the owner had created the nonconforming condition "for [his] financial gain." In the light of these several critical factual uncertainties, it seems inappropriate to describe Brolly's as an "exceptional case."

[3] I note that G. L. c. 40A, § 10, does not identify an eminent domain taking as one of the circumstances that can give rise to the requisite hardship justifying variance relief. Even if it were, it would not be one that "relat[es] to the soil conditions, shape, or topography" uniquely affecting the particular property (see note 1, *supra*). It is therefore questionable whether the MDC taking was a relevant analytical factor in evaluating Brolly's entitlement to a variance in the instant circumstances, which involved only dimensional nonconformity.

to do so. (In any event, the finding is irrelevant to the underlying issue; see note 1, *supra*.)

Finally, I view the authorities on which the majority principally rely — *Paulding* v. *Bruins*, 18 Mass. App. Ct. 707 (1984), and *Smith* v. *Zoning Bd. of Appeals of Norwalk*, 174 Conn. 323 (1978) — as inapposite. In neither case had the owner himself (unlike Brolly) created the circumstances that rendered the locus nonconforming.[4] I find more authoritative, in addition to *Gordon*, the decision in *Tsagronis* v. *Board of Appeals of Wareham*, 415 Mass. 329 (1993). There, the Supreme Judicial Court held that the "shape of the land" criterion of G. L. c. 40A, § 10 (which would have to be satisfied to warrant a variance here, because there is nothing in the record suggesting uniqueness ·of soil conditions or topography), is not met merely because the *shape* of the particular lot as subdivided is such as to have insufficient frontage. "[F]ailure to meet dimensional requirements does not satisfy the odd shape criterion of the statute." *Id.* at 332 (citations omitted). Accord *Warren* v. *Zoning Bd. of Appeals of Amherst*, 383 Mass. 1, 11 (1981); *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. 802, 804 (1981); *Guiragossian* v. *Board of Appeals of Watertown*, 21 Mass. App. Ct. 111, 116 (1985); *Gordon*, 22 Mass. App. Ct. at 351; *DiCicco* v. *Berwick*, 27 Mass. App. Ct. 312, 313-314 (1989); *Karet* v. *Zoning Bd. of Appeals of Worcester*, 27 Mass. App. Ct. 439, 440 (1989); *Feldman* v. *Board of Appeal of Boston*, 29 Mass. App. Ct. 296, 297 (1990).

Accordingly, I agree with the appellant Adams and would reverse the judgment below and order entry of a new judgment annulling the decision of the zoning board of appeals as in excess of its authority. See *Warren* v. *Zoning Bd. of Appeals of Amherst, supra* at 12-13.

---

[4]*Paulding* was the basis for the favorable decisions on the variance by the zoning board and the trial judge. The *Paulding* case is further distinguishable because it involved a lot created before the adoption of zoning. As pointed out in *DiCicco* v. *Berwick*, 27 Mass. App. Ct. 312, 314-315 (1989), no appellate decision has approved the grant of a variance to a lot that violated zoning frontage requirements at the time of its creation, and a long line of cases has disapproved of such variances.