MARIO A. PEREZ & another[1] *vs.* BOARD OF APPEALS OF
NORWOOD & another.[2]

No. 99-P-1029.

Norfolk. February 8, 2001. - March 7, 2002.

Present: GREENBERG, BECK, & RAPOZA, JJ.

*Zoning,* Variance, Frontage. *Subdivision Control,* Zoning requirements, Front-
age on public way.   ·

A town's board of appeals exceeded its authority with respect to a variance
granted a developer as to a particular lot in a proposed subdivision, where
insufficient frontage was not a special circumstance creating the need for
the variance, where the developer's hardship was self-inflicted, and where
the landowner's desire to maximize his profit did not constitute
"substantial" hardship under G. L. c. 40A, § 10. [142-144]

CIVIL ACTION commenced in the Superior Court Department on
January 6, 1997.

The case was heard by *Judith Fabricant,* J.

*Brian J. Rogal* for the plaintiffs.

*Louis J. Caccavaro, Jr.,* for Richard H. Vara.   ·

GREENBERG, J. The question whether variances were properly
granted by the board of appeals of Norwood (board), allowing
the defendant, Richard H. Vara, to proceed with a proposed
residential subdivision on three acres of land, was the main
issue argued in this appeal by the plaintiffs, Mario A. and
Suzanne M. Perez. A Superior Court judge decided this case in
favor of Vara and the board. We reverse.[3]

---

[1]Suzanne M. Perez.

[2]Richard H. Vara.

[3]Although Vara requested (and did not obtain) a ruling from the trial judge
that the plaintiffs lacked standing, he does not press the question on appeal.
Standing is, nonetheless, a jurisdictional issue. *Marotta* v. *Board of Appeals of
Revere,* 336 Mass. 199, 202-203 (1957). *Cohen* v. *Zoning Bd. of Appeals of
Plymouth,* 35 Mass. App. Ct. 619, 620 (1993). On our review of the record,

The question arises in this manner. Three separate parcels comprise the land that Vara proposes to develop. The development would contain seven new lots and abut an earlier subdivision named Varwood Circle that Vara's father laid out in the 1950's. Vara has since come to own, and now wishes to develop, certain land retained by his father, fronting on Varwood Circle, as well as two other parcels formerly owned by Eva Procopio. Both subdivisions are depicted on a sketch that we have included as an Appendix to our opinion (the land retained by Vara's father is not clearly shown).[4] The remaining two parcels that would comprise Vara's subdivision are depicted as "Old Procopio Lot 1" and "Old Procopio Lot 2." The combined area of land now held by Vara is denoted as the "Vara land."

As shown on the sketch, the Vara land contains a number of deficiencies relative to the current Norwood zoning by-law. The house and detached garage were built prior to the enactment of the current by-law. These structures would remain standing on lot 6 under Vara's subdivision plan, but they encroach into the required front and side yards. Moreover, the Vara land has frontage on Varwood Circle as well as on Rock Street, but the record is unclear on the amount of frontage on Varwood Circle. In addition, the Vara land lacks sufficient frontage on Rock Street under the current zoning by-law.

Prior to the transfer of land from Procopio to Vara, Old Procopio Lots 1 and 2 were held in common ownership with the adjacent parcel at 170 Rock Street, which is also shown on the sketch. Under the existing zoning by-law, 170 Rock Street is an undersize lot that lacks adequate frontage, and the house on that parcel, where Eva Procopio still lives, lacks the requisite

we are satisfied that the plaintiffs face direct impact to their property from the variances granted by the board, in the form of increased traffic passing by their front and side lot lines on a new subdivision road, as well as a changed relationship to the surrounding land. See *Bedford* v. *Trustees of Boston University*, 25 Mass. App. Ct. 372, 377-378 (1988). We proceed on the premise that the plaintiffs have standing to maintain this action.

[4]This sketch was not produced by the parties or used in the proceedings below. However, because of certain ambiguities in the existing plans (not the least of which is the location of Vara's original parcel), we have commissioned from the engineering department of the Land Court the sketch as an aid to our decision. The sketch is included only for purposes of analysis and is not intended to be complete and accurate as to the nature of Vara's plans.

front and side yards. In selling the rest of her land to Vara, Procopio severed 170 Rock Street from adjacent land that, when combined with 170 Rock Street, afforded compliance in frontage and area under the current Norwood zoning by-law.[5]

The sketch depicts the lots in Vara's proposed subdivision. As a result of Vara's plan, a new, larger 170 Rock Street (shown on the sketch with a dotted back yard line and labeled as lot 7) would contain the necessary 10,000 square-foot minimum area for lots in Norwood. Lot 6 would also contain 10,000 square feet, occupy the portion of the Vara land that fronts on Rock Street, and assume the street address assigned to the house and garage situated on it, 62 Oliver Street. Two proposed lots (lots 1 and 2) would be located, respectively, behind 62 Oliver Street and 170 Rock Street. To provide access to these lots and three others shown on the sketch (lots 3, 4, and 5), Vara proposes to construct a new cul-de-sac perpendicular to Varwood Circle, which would run from Varwood Circle's southeast side and loop around the plaintiffs' property at 14 Varwood Circle.

Vara, the board, and the trial judge suggest that a variance is necessary in this case to avoid the application of § 4110 of the Norwood zoning by-law to 62 Oliver Street. That section of the by-law states, "The erection, extension, alteration, or moving of a structure or the creation of a lot or change in its size or shape (except through a public taking) must meet the requirements set

---

[5]As far as appears on the record, at least some of the current nonconformities result from this severance of land, leaving both Vara and Procopio with noncompliant parcels. A settled principle in the zoning context applies here: "A landowner will not be permitted to create a dimensional nonconformity if he could have used his adjoining land to avoid or diminish the nonconformity." *Whelan* v. *Zoning Bd. of Appeals of Norfolk,* 430 Mass. 1009, 1009-1010 (2000), quoting from *Planning Bd. of Norwell* v. *Serena,* 406 Mass. 1008, 1009 (1990). *Seltzer* v. *Board of Appeals of Orleans,* 24 Mass. App. Ct. 521, 522 (1987). Cf. *Preston* v. *Board of Appeals of Hull,* 51 Mass. App. Ct. 236, 238-244 (2001). Prior to the severance of 170 Rock Street from Old Procopio Lot 1, the combined parcel contained compliant frontage on Rock Street. In addition, the structures at 62 Oliver Street and 170 Rock Street, then situated on land in common ownership, did not violate the side yard requirement in their orientation to each other. In adopting Vara's characterization of some of these deficiencies as valid preexisting conditions, the trial judge appears not to have considered the possibility that the frontage and side yard nonconformities arose from an improper severance subsequent to the adoption of the zoning by-law.

forth in Section 4200, Dimensional Regulations Schedules
. . . ."

The trial judge based her conclusion on findings that all
requirements for a variance had been met. Those requirements,
embodied in G. L. c. 40A, § 10, as inserted by St. 1975, c. 808,
§ 3, are as follows:

> "[1] that owing to circumstances relating to the soil condi-
> tions, shape, or topography of such land or structures and
> especially affecting such land or structures but not affect-
> ing generally the zoning district in which it is located, [2]
> a literal enforcement of the provisions of the ordinance or
> by-law would involve substantial hardship, financial or
> otherwise, to the petitioner or appellant, and [3] that desir-
> able relief may be granted without substantial detriment to
> the public good and without nullifying or substantially
> derogating from the intent or purpose of such ordinance or
> by-law."

The judge correctly noted that these requirements are conjunc-
tive and that variances may properly be granted only where all
three requirements are met. *Kirkwood* v. *Board of Appeals of
Rockport,* 17 Mass. App. Ct. 423, 428 (1984). Correspondingly,
she found that (1) "[t]he size and configuration of the parcels in
issue are substantially distinct from those in the surrounding
area"; (2) "[l]iteral enforcement of the by-law would compel
the land owner to take wasteful and costly action [razing the
buildings at 62 Oliver Street], with no benefit to anyone . . .
[and] would be a hardship"; and (3) "[t]he grant of the vari-
ance eliminates this hardship without any detriment to the public
good, and without any derogation from the intent or purpose of
the by-law." Accordingly, the judge affirmed the board's grant
of relief.[6]

On our review of the record, we find it insufficient to sustain
the trial judge's conclusions that the first and second require-
ments for the allowance of a variance have been met. Although
Vara, the board, and the judge approach this case as if the ap-

---

[6]The trial judge also concluded that the changes to the lot lines of 170 Rock
Street were governed by an exception to § 4110 of the by-law, which states,
"Lot line changes to nonconforming lots are allowed provided that they create
neither additional lots nor increase in nonconformity." No argument on appeal
is addressed to any variance granted with respect to 170 Rock Street.

plication of § 4110 of the by-law precipitates the need for vari-
ances for lot 6, we are not at all certain that this analysis is
correct. To the extent that (as Vara appears to argue) the new
subdivision plan creates no new nonconformities, but see note
5, *supra,* the house and garage situated at 62 Oliver Street
might enjoy the protection of G. L. c. 40A, § 6, despite the
more stringent requirements of § 4110 of the by-law. See *Mc-
Laughlin* v. *Brockton,* 32 Mass. App. Ct. 930, 932 (1992).
Indeed, the trial judge may have endorsed this possibility in a
cryptic fashion, see note 5, *supra,* without citation to § 4113 of
the Norwood zoning by-law, which states, "In certain other
cases current regulations are made inapplicable by provisions of
Section 6 of Ch.40A, G.L."

Two problems inescapably appear alongside this possibility,
however viable it may be on the record. First, the fact that lot 6
has insufficient frontage on Rock Street could not stand as the
only ground supporting the variances granted by the board.
*Warren* v. *Zoning Bd. of Appeals of Amherst,* 383 Mass. 1, 11
(1981). *Tsagronis* v. *Board of Appeals of Wareham,* 415 Mass.
329, 332-333 (1993) (explaining why insufficient frontage,
without more, cannot be special circumstance creating need for
variance). Second, Vara's choice to separate lot 6 from avail-
able, conforming frontage on his proposed new cul-de-sac
means that his hardship is self-inflicted, another fact which can-
not support the relief granted. *Whelan* v. *Zoning Bd. of Appeals
of Norfolk,* 430 Mass. 1009, 1009-1010 (2000). *DiCicco* v. *Ber-
wick,* 27 Mass. App. Ct. 312, 314-315 (1989). *Karet* v. *Zoning
Bd. of Appeals of Worcester,* 27 Mass. App. Ct. 439, 440-441
(1989). Cf. *Valcourt* v. *Zoning Bd. of Appeals of Swansea,* 48
Mass. App. Ct. 124, 130 (1999).

With these problems clear, it appears, as well, that the impetus
for the variances here is Vara's desire to create six new lots,
rather than five, in his proposed subdivision.[7] Thus, Vara might
solve these problems by combining lots 1 and 6 to form a large
parcel with sufficient frontage on his new cul-de-sac. Or Vara
might attempt to convey 62 Oliver Street and the buildings situ-
ated on it back to Procopio — so that it and 170 Rock Street

---

[7]The new 170 Rock Street constitutes the seventh lot in Vara's subdivision
plan, labeled and discussed here as lot 7.

could again rely on each other for compliance — and he could use the remainder of his land to construct a new cul-de-sac and subdivision (with only five lots). The record is also unclear whether Vara could take advantage of his frontage on Varwood Circle for compliance, without constructing a subdivision.[8] Vara's desire to maximize his profit, however, does not constitute "substantial" hardship under G. L. c. 40A, § 10. *Bruzzese* v. *Board of Appeals of Hingham*, 343 Mass. 421, 424 (1962). *Warren* v. *Zoning Bd. of Appeals of Amherst*, 383 Mass. at 12. *Guiragossian* v. *Board of Appeals of Watertown*, 21 Mass. App. Ct. 111, 118 (1985). See *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. 802, 804 (1981); *Karet* v. *Zoning Bd. of Appeals of Worcester*, 27 Mass. App. Ct. at 441. On this record, given the plan before us, we cannot sustain the variances granted for lot 6 as shown on the sketch.[9]

The amended judgment as to 62 Oliver Street is reversed, and a new judgment shall enter that annuls the decision of the board as in excess of its authority with respect to the variances granted as to that lot. As no arguments were addressed to the other variances, see note 6, *supra*, the amended judgment is otherwise affirmed.

*So ordered.*

---

[8]In addition to the lack of clarity on the amount of frontage that Vara currently holds on Varwood Circle, the record does not disclose whether frontage must be contiguous to count toward the requirements in the current Norwood zoning by-law.

[9]For the reasons stated, we also disagree with Vara's contention that this appeal is frivolous under Mass.R.A.P. 25, as amended, 378 Mass. 925 (1979), and G. L. c. 231, § 6F.