PAUL G. LAMB[1] & another[2] vs. ZONING BOARD OF APPEALS
OF TAUNTON.

No. 09-P-1023.

Bristol. January 7, 2010. - April 2, 2010.

Present: RAPOZA, C.J., BERRY, & WOLOHOJIAN, JJ.

*Zoning,* Variance, Lot. *Real Property.*

The purchase of a nonconforming lot, with knowledge that it is nonconform-
ing, does not, by itself, preclude zoning relief on the ground that the
purchaser's hardship is self-created; therefore, a Superior Court judge erred
in affirming the denial of a variance by a local zoning board of appeals on
that ground. [515-518]

A minimum contiguous dry lot area (i.e., land that is not wetlands as defined
by the Massachusetts Wetlands Protection Act) zoning requirement is not
dimensional, but rather is directly tied to soil conditions, namely the pres-
ence of water; similarly, the square footage of the contiguous dry area
requirement is not dimensional, but rather a function of the size, shape and
placement of wetlands, and topography; therefore, a Superior Court judge
erred in affirming the denial of a variance by a local zoning board of ap-
peals on the ground that a contiguous dry land requirement was dimensional.
[518-519]

This court did not consider the issue whether a Superior Court judge erred in
affirming the denial of a special permit by a local zoning board of appeals
(board) to allow access to two lots by a shared driveway, where the judge
expressly did not review the board's denial of the special permit. [519]

CIVIL ACTION commenced in the Superior Court Department
on December 6, 2006.

The case was heard by *Robert C. Cosgrove,* J.

*David T. Gay* (*Matthew J. Costa* with him) for the plaintiffs.

WOLOHOJIAN, J. Today we address whether purchasing a non-
conforming lot with actual knowledge of its nonconformity is,
standing alone, sufficient basis upon which to deny zoning
relief as a self-created hardship. We hold that it is not.

[1]Individually and as cotrustee of D&P Realty Trust.

[2]David M. Lamb, individually and as cotrustee of D&P Realty Trust.

*Background.* The facts, as set out in the Superior Court judge's written findings, are not contested on appeal, but we repeat those, and others, that are relevant here. Paul G. Lamb and David M. Lamb, suing individually and as cotrustees of D&P Realty Trust (D&P Realty) (collectively, plaintiffs), own two adjacent lots (lots) in the city of Taunton (city). Paul[3] previously had owned a larger parcel, for which he obtained approval to develop a twenty-one lot subdivision in 1987. The lots were created as part of that subdivision. In 1988, Paul deeded the entire subdivision, including the lots, to MJ Realty Trust (MJ Realty). MJ Realty, in turn, granted a mortgage to Paul on the lots (in addition to several other parcels in the subdivision). At the time of the approval and the sale, the entire subdivision was located in the suburban residential zoning district, which required 25,000 square feet of total lot area and had no minimum dry area requirement. When the lots were created, they conformed to the zoning requirements.

Over the following years, MJ Realty developed all but three of the subdivision parcels. Of those three, two are the lots at issue in this case. MJ Realty conveyed the lots in 1988 to a third party.

In 1993, the lots (together with two others in the subdivision) were the subject of a variance petition that sought to allow the four lots to share a driveway.[4] At the time, a variance was necessary if a driveway was to serve more than two lots.[5] The zoning board of appeals (board) denied the variance, and the driveway was thereafter constructed so as to give access to only two lots.

In 1995, the subdivision became subject to rural residential zoning.[6] Pertinent here, the rural residential zone requires buildable lots to contain 60,000 square feet, of which 43,560 must be contiguous dry area. The lots (together) contain only approximately 23,800 square feet of contiguous dry area, but otherwise satisfy all zoning requirements.

---

[3]We employ first names of the plaintiffs for the sake of clarity.

[4]The proposed shared driveway was to cross a brook via a cement bridge.

[5]The relevant city ordinance subsequently was changed to allow shared driveways only by special permit.

[6]The zoning for the subdivision was changed in 1989. However, the subdivision did not become subject to the new zoning until 1995, after the subdivision's zoning freeze expired. See G. L. c. 40A, § 6. The plaintiffs do not contend that the lots are otherwise grandfathered. See *ibid.*

In 1996, the city took the lots for failure to pay the required property taxes. In 2005, Paul, as mortgagee, redeemed the tax taking by paying the outstanding taxes and legal fees. At the same time, the third-party owner of the lots conveyed any remaining interest he retained to Paul. Paul then conveyed the property to himself and his brother, David, as cotrustees of D&P Realty.

Paul petitioned the board for a variance from the contiguous dry land requirement and also sought a special permit to allow the driveway, referenced *supra,* to access the lots.[7] The board denied both the variance and the special permit. As to the variance, the board concluded that Paul "created his own hardship by purchasing the two unbuildable lots after the subdivision had expired and then expecting zoning relief." The board also concluded that abutting properties would be "adversely impacted" were the variance to be granted by changing existing drainage patterns and causing additional runoff.[8] The board denied the special permit on the ground that allowing an additional lot to be accessed by the existing common driveway would not be "in harmony with the surrounding residences."

The plaintiffs appealed to the Superior Court pursuant to G. L. c. 40A, § 17, seeking de novo review. After trial, the judge affirmed the denial of the variance on two grounds. First, the judge held that, by purchasing the premises with knowledge the lots were nonconforming, Paul created his own hardship and thus the plaintiffs were not entitled to a variance. Second, the judge held that the dry land requirement relates to size rather than "soil condition, shape, or topography" and, accordingly, the plaintiffs were not entitled to zoning relief pursuant to G. L. c. 40A, § 10. Finding as he did with respect to the variance, the judge did not reach the issue of the special permit.

1. *The variance.* Under G. L. c. 40A, § 10, inserted by St. 1975, c. 808, § 3, a variance may be granted only when "a literal enforcement of the [zoning] provisions . . . would involve substantial hardship . . . to the petitioner . . . ." A property owner cannot obtain a variance by creating his own

---

[7]Even though there are two lots, the plaintiffs seek to build only one residence on them, and thus the special permit sought to add only one additional residence to the driveway access already shared by two residences.

[8]The judge rejected this determination, and no appeal has been taken from this aspect of the decision.

hardship. *Adams* v. *Brolly*, 46 Mass. App. Ct. 1, 4 (1998). Generally, hardships are deemed self-created when a property owner, by some overt act, transforms what was once a conforming parcel into a nonconforming one. See, e.g., *Raia* v. *Board of Appeals of North Reading*, 4 Mass. App. Ct. 318, 322 (1976) (division of property into two nonconforming lots was not basis for variance because nonconforming lot "could have remained part of a conforming lot"); *Shafer* v. *Zoning Bd. of Appeals of Scituate*, 24 Mass. App. Ct. 966, 967 (1987) (affirming annulment of board's grant of variance when deficiency was "one which they themselves produced through subdivision" even though zoning requirements applied); *Karet* v. *Zoning Bd. of Appeals of Worcester*, 27 Mass. App. Ct. 439, 440 (1989) ("a lot can not qualify for a variance if the circumstance creating the hardship is itself the result of a transfer that violates . . . applicable zoning requirements").

We previously have not had occasion to address whether purchase of a nonconforming lot, with knowledge that it is nonconforming, by itself precludes zoning relief on the ground that the purchaser's hardship is self-created.[9] The question has, however, been addressed in other jurisdictions.

Most other jurisdictions have held that purchase of a nonconforming property, even where the purchase occurs with actual knowledge of the nonconformity, does not by itself preclude zoning relief; a purchaser does not acquire less right to a variance than a seller. See, e.g., *Johnny Cake, Inc.* v. *Zoning Bd. of Appeals*, 180 Conn. 296, 300-301 (1980) ("if the hardship is created by the enactment of a zoning ordinance and the owner of the parcel could have sought a variance, then the purchaser has the same right to seek a variance"); *Roeser Professional Builder, Inc.* v. *Anne Arundel County*, 368 Md. 294, 303 (2002), quoting from 3 Rathkopf, Law of Zoning and Planning § 58.22, at 141-148 (1991) ("because a purchaser of property acquires no greater right to a variance than his predecessor, he should not be held to acquire less"); *Chirichello* v. *Zoning Bd. of Adjustment of Monmouth Beach*, 78 N.J. 544, 555 (1979) (for purposes of

---

[9]Because purchasers are charged with constructive notice of zoning restrictions on the property they purchase, the "with knowledge" requirement is less a separate prong than a descriptive term. See *Leonard* v. *Brimfield*, 423 Mass. 152, 155, cert. denied, 519 U.S. 1028 (1996).

zoning relief, property owner "stand[s] in the shoes of predecessors in title"); *Lewis* v. *Pickering*, 134 Vt. 22, 26-27 (1975) (successor in title has same right to variance as his predecessor). To hold otherwise would discourage the free alienability of real property and the efficient use of land.

Although some jurisdictions have taken the countervailing view,[10] we believe the majority view to be more sound. To hold otherwise would foreclose purchasers of nonconforming property from obtaining variances, regardless of other circumstances, if they knew of the nonconformity at the time of purchase.[11] Put another way, only existing owners of nonconforming lots would be entitled to obtain variances. Although variances are to be granted sparingly, *Damaskos* v. *Board of Appeal of Boston*, 359 Mass. 55, 61 (1971), we see nothing in G. L. c. 40A, § 10, or our cases that inclines us to establish a per se rule excluding those who knowledgeably purchase nonconforming properties from zoning relief.

That said, even if we were to conclude that purchase with knowledge of a nonconformity is simply one factor that may be considered — together with others — when deciding whether to grant a variance, see 8 Rohan, Zoning and Land Use Controls § 43.02[6][c] (2009) ("arguably the best approach . . . is to treat purchase with knowledge simply as one element to be considered"), the act of purchasing with knowledge is not, *standing alone*, sufficient basis upon which to deny a variance.[12] See *Twigg* v. *Kennebunk*, 662 A.2d 914, 916 (Me. 1995), quoting

[10]See, e.g., *Rush* v. *Greenville*, 246 S.C. 268, 278-279 (1965) ("Where one purchases realty with intention to apply for variance, he cannot contend that restrictions caused him such peculiar hardship that entitles him to [zoning relief]"); *Alleghany Enterprises, Inc.* v. *Board of Zoning Appeals of Covington*, 217 Va. 64, 69-70 (1976) (not error of law for zoning board to find that purchaser created his own hardship when he purchased parcel zoned for residential use and subsequently sought variance for commercial use).

[11]Arguably, purchasers with constructive knowledge of the nonconformity also would be subject to such a rule. See *Leonard* v. *Brimfield*, 423 Mass. 152, 155 (1996).

[12]We emphasize that this case involves nothing more than a purchase with knowledge. We are not here presented, for example, with a nonarm's-length purchase, or with an owner who (either during his current period of ownership or during an earlier period when he had an interest in the property) allowed a zoning exemption, zoning freeze, or grandfather status to lapse. See, e.g., *Tsagronis* v. *Board of Appeals of Wareham*, 415 Mass. 329 (1993).

from 3 Rathkopf, Law of Zoning and Planning § 38.06(2) (1988) (abrogating rule that purchase with knowledge constitutes self-created hardship, stating that rule has been " 'altogether abandoned or modified into nonexistence' in most jurisdictions"); *Rocheleau* v. *Greene,* 708 A.2d 660, 662 (Me. 1998) ("knowledge is only one factor to be considered in the self-created hardship analysis").

The judge erred when he affirmed the denial of a variance on the ground that Paul had created his own hardship by acquiring the property with knowledge of its nonconformity.[13] Our review does not end there, however, because the judge also affirmed the board's denial on the basis that the contiguous dry land requirement is dimensional, and does not relate to "soil conditions, shape, or topography" within the meaning of G. L. c. 40A, § 10. See *Tsagronis* v. *Board of Appeals of Wareham,* 415 Mass. 329, 331-332 (1993) (lot's dimensional deficiencies are not the sort of deficiencies for which zoning relief may be afforded pursuant to § 10). We accordingly turn to that question.

The lots are in a rural residential zone, which (as noted, *supra*) requires a minimum of 43,560 square feet of contiguous dry lot area. This requirement entails a two-part assessment: first, one must determine what portions of the lot are dry, and second, one must calculate the square footage of the contiguous dry area. As to the first, dry land is defined by what it is not, namely, "wetlands as defined by the Massachusetts Wetlands Protection Act" (MWPA), as stated in the relevant city ordinance. The MWPA in turn defines wetlands as "wet meadows, marshes, swamps, bogs, areas where groundwater, flowing or standing surface water or ice provide a significant part of the supporting substrate for a plant community for at least five months of the year." G. L. c. 131, § 40, as appearing in St. 1974, c. 818, § 1. Whether land is a wetland within the meaning of the MWPA requires one to examine, inter alia, the condition of the soil as it pertains to the presence of water. Unlike dimensional requirements such as lot size or frontage, therefore, the dry lot requirement is directly tied to the presence of a particular natural condition, namely water, below, in, or on the soil. As such, it falls squarely within the ambit of G. L. c. 40A, § 10.

---

[13]That Paul redeemed the property rather than purchased it outright makes no difference to our analysis.

The square footage of the contiguous dry area in these circumstances also is not a dimensional requirement, but rather a function of the size, shape, and placement of wetlands. This proposition most easily can be explained by way of a hypothetical. Assume, for example, a 100,000 square foot lot contains 50,000 square feet of wetlands. If all of the wetlands are located in a single block on one end of the lot, then the minimum contiguous dry lot requirement is met. If, however, the wetlands are located in the middle of the lot with two equal strips of land on either side, then the dry lot requirement is not met. Thus, the dry lot requirement is not properly understood as solely one of dimension, but rather as one relating to soil condition or topography.

For each of these reasons, the judge's decision was incorrect.

2. *The special permit.* The plaintiffs argue that the judge erred in upholding the board's denial of a special permit. Although the judge found certain facts pertinent to the denial of the special permit,[14] he expressly did not review the board's denial of the special permit. We decline to review an issue not reached below and, moreover, one that may never need to be decided. See *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington,* 399 Mass. 771, 782 (1987). We note in this regard that the city did not file a brief in this appeal nor did it appear for oral argument[15] before this court, and, accordingly, it is unclear whether it continues to oppose the grant of a special permit. Regardless of the city's position, the issue is not properly before us at this juncture.

For the reasons stated, the judgment is reversed, and the matter is remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*So ordered.*

---

[14]The judge, in his de novo fact finding, found that widening the common driveway would benefit the abutting parcels and that the cement bridge showed no signs of any serious deterioration.

[15]Having not filed a brief, the city was not entitled to argue without leave, which it did not seek. See Mass.R.A.P. 19(c), 365 Mass. 867 (1974).